726 F.2d 1410
 5 Employee Benefits Ca 1611
 CARPENTERS SOUTHERN CALIFORNIA ADMINISTRATIVE CORPORATION,
Plaintiff-Appellant,
v.
Larry RUSSELL, Sr., an individual doing business under the
fictitious name of Larry Russell Construction,
Defendant-Appellee.
 No. 82-6107.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 9, 1983.
Decided Feb. 28, 1984.
 
 Colin M. Long, Richard A. Brownstein, Los Angeles, Cal., for plaintiff-appellant.
 Eugene F. McMenamin, Atkinson, Andelson, Loya, Ruud & Romo, Long Beach, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before SNEED, NELSON, and REINHARDT, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Carpenters Southern California Administrative Corporation, Inc., an administrator of employee benefit plans for construction workers in southern California, sued Larry D. Russell, Sr., pursuant to section 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. Sec. 1132, for failure to make benefit contributions. The district court granted summary judgment in favor of Russell and awarded him attorney's fees.
 
 
 2
 We affirm the order granting summary judgment, and we remand this case for reconsideration of the fee award in the light of this opinion.
 
 I.
 FACTS
 
 3
 In 1969, appellee Larry D. Russell, Sr. (Russell) established a contracting business as a sole proprietor under the name Larry Russell Construction. Because he did not possess his own California contractor's license, Russell qualified and operated his business by associating it with a license held by Hulen Darby.[1] In order to obtain union contracts, Larry Russell Construction in 1969 entered into a "prehire" agreement pursuant to section 8(f) of the National Labor Relations Act, 29 U.S.C. Sec. 158(f), with the United Brotherhood of Carpenters and Joiners of America, AFL-CIO, and affiliated locals (Union).[2] The prehire agreement required that Larry Russell Construction make benefit contributions on behalf of its employees.
 
 
 4
 Russell terminated his contracting business in 1971. As a consequence, Larry Russell Construction ceased to exist at the same time. Union records of a meeting in August 1971 indicate that Russell informed the Union that Larry Russell Construction was no longer in business. In November 1971, Darby disassociated his license from Russell. Thereafter Russell could not legally continue his contracting business and he earned his living by working as a carpenter until August 1977.
 
 
 5
 In August 1977 Russell established a second contracting business. This time he obtained his own contractor's license which had the same number as the one he operated under when associated with Darby. The name on the license was that of Russell Construction, not Larry Russell Construction. Since its inception in 1977, Russell Construction has operated openly as a nonunion business.
 
 
 6
 The Union contacted Russell in 1981 and claimed that Russell Construction remained bound by the 1969 prehire agreement. Russell rejected this claim and responded by filing a representation petition with the National Labor Relations Board (NLRB). The Union countered by filing an unfair labor practice charge. At an NLRB hearing on July 1, 1981, the Union withdrew its charge and disclaimed interest in representing the employees of Russell Construction.
 
 
 7
 In the weeks following the NLRB hearing, Carpenters Southern California Administrative Corporation, Inc. (Carpenters Southern) recorded mechanics liens against jobsites at which Russell Construction had been employed. These liens were based on claims for alleged delinquencies in fringe benefit contributions for the employees of Russell Construction.
 
 
 8
 On December 30, 1981, Carpenters Southern filed this action against Russell seeking damages pursuant to section 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1132. As already noted, the district court granted Russell's motion for summary judgment on November 16, 1982 and awarded Russell attorney's fees pursuant to 29 U.S.C. Sec. 1132(g)(1).
 
 II.
 ISSUES
 
 9
 The principal issue in this case is whether the district court correctly held that Russell is not bound by the 1969 prehire agreement. Inasmuch as we hold that the district court did not err, it then becomes necessary to determine if the district court acted properly in awarding Russell attorney's fees pursuant to 29 U.S.C. Sec. 1132(g)(1), and whether Russell is entitled to an award of fees for costs incurred in this appeal.
 
 III.
 THE REACH OF THE 1969 PREHIRE AGREEMENT
 
 10
 Carpenters Southern's case rests on its understanding of the reach of the prehire agreement Russell signed in 1969 on behalf of his previous business. For him to be obligated to make benefit contributions for the employees of his present business, Russell Construction, there must exist a binding labor agreement between the Union and Russell that extends to the business being conducted under the name of Russell Construction. See Washington Area Carpenters' Welfare Fund v. Overhead Door Co., 681 F.2d 1, 9 (D.C.Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 2085, 77 L.Ed.2d 296 (1983); Seymour v. Coughlin Co., 609 F.2d 346 (9th Cir.1979), cert. denied, 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 816 (1980).
 
 
 11
 The district court relied on the principle that a bona fide and actual discontinuance of a business by an employer, who previously had entered into a collective bargaining agreement, precludes the binding of a successor employer to the substantive terms of that earlier agreement. See Brick Masons Pension Trust v. Wallace, 106 L.R.R.M. 2375, 2377 (C.D.Cal.1980), aff'd mem. in relevant part, 672 F.2d 921 (9th Cir.1982). The business conducted as Larry Russell Construction, the court found, was terminated in good faith and without antiunion animus. Invoking the principle stated above, the district court held that Russell, doing business as Russell Construction, is not bound by the 1969 agreement as either an "alter ego" of or a "successor employer" to Larry Russell Construction.[3]
 
 
 12
 Carpenters Southern argues that the district court ignored the actual provisions of the prehire agreement. That agreement, appellant claims, applies to Russell personally in whatever business he operates, until he terminates the agreement according to its terms.[4] Section 8 of the prehire agreement provides that the agreement is renewed each year on May 1, unless either party gives written notice of a desire to change or cancel it at least sixty days before May 1. Because Russell never provided written notice of his intent to terminate the 1969 agreement, Carpenters Southern argues that he remained obligated to make benefit contributions when he established his second contracting business in 1977.[5]
 
 
 13
 The district court rejected these arguments and we affirm. In cases of this sort we should proceed cautiously and on a case-by-case basis. Cf. Zinser-Furby, Inc. v. San Diego County Dist. Council of Carpenters, 681 F.2d 1171, 1172 (9th Cir.1982) (case-by-case adjudication is appropriate method for interpreting short-form labor agreements). The unusual, but simple, circumstances of this case, considered together, persuade us that Russell's obligations under the 1969 agreement terminated and he is not obligated to make benefit contributions for the employees of Russell Construction.
 
 
 14
 The facts influencing our conclusion include the 1971 meeting at which Russell expressly told the Union that he was no longer in business. Union records preserved this statement in writing. We also note that Larry Russell Construction was terminated in good faith and Russell subsequently earned his living for six years by working as a carpenter. When he reentered the contracting business in 1977, he operated openly as a nonunion company.[6] Four years elapsed before Carpenters Southern asserted its claim for benefit contributions based on the 1969 prehire agreement. The totality of these circumstances make unconvincing the argument that Russell remains bound because he did not provide written notice of his intent to terminate the 1969 agreement.
 
 
 15
 While perhaps the promise to make benefit contributions should not be viewed entirely as a simple promise enforceable only under ordinary contract principles, it is true that the obligation such a promise imposes does not possess eternal life. Here that life was effectively snuffed out prior to Russell's 1977 reentry into the construction business.
 
 IV.
 
 16
 THE AWARD OF ATTORNEY'S FEES UNDER 29 U.S.C. Sec. 1132(g)(1)
 
 
 17
 The district court's award of attorney's fees was made pursuant to 29 U.S.C. Sec. 1132(g)(1). Carpenters Southern argues that the statute does not allow the award of fees to prevailing defendant employers in suits brought to enforce section 515 of ERISA, 29 U.S.C. Sec. 1145.[7] Carpenters Southern further contends that even if the statute does allow fee awards to defendants in such cases, the award in this case was improper.
 
 
 18
 We first consider the language of the statute. In pertinent part, section 502(g) of ERISA provides:
 
 
 19
 (1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.
 
 
 20
 (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
 
 
 21
 * * *(D) reasonable attorney's fees and costs of the action, to be paid by the defendant,
 
 
 22
 * * *
 
 
 23
 29 U.S.C. Sec. 1132(g).
 
 
 24
 Subsections (g)(1) and (g)(2) indicate that the court in all situations save one has discretion to make fee awards to either party, but that fees must be awarded to the plan if a fiduciary prevails in an action to recover delinquent contributions. See Sapper v. Lenco Blade, Inc., 704 F.2d 1069, 1072-73 (9th Cir.1983). Carpenters Southern's argument that the only authorization to award fees in suits pursuant to section 515 is subsection (g)(2) rests on the fact that both were enacted by the 1980 amendments to ERISA. This argument, however, must overcome the fact that (g)(2) was made a part of section 502, of which (g)(1) also is a part. Moreover, it must read the parenthetical clause of (g)(1) as if it read "(other than an action described in paragraph (2) without regard to who prevails therein )." Nothing in the legislative history cited by Carpenters Southern supports such a departure from the actual statutory language.[8] Thus the district court correctly held that attorney's fees may be awarded to employers that successfully defend actions brought under 29 U.S.C. Sec. 1145. See Sapper, 704 F.2d at 1073.
 
 
 25
 Because subsection (g)(1) commits the allowance of fees to the discretion of the district court, an award of fees will be reversed only for abuse of discretion. E.g., Sapper, 704 F.2d at 1073. However, the exercise of this discretion should be within reasonable guidelines. We have indicated previously that the district court should consider, among others, these factors:
 
 
 26
 (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting in similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.
 
 
 27
 Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980).[9]
 
 
 28
 Carpenters Southern argues that the criteria for awarding fees should not be the same for defendants and plaintiffs. First, Carpenters Southern maintains that fees should be awarded to defendant employers under section 1132(g)(1) only if there is a finding of bad faith on the part of the plaintiff.[10] This argument impermissibly replaces the statutory provision that vests the court with discretion with a rule that permits discretion to be exercised if, and only if, the suit was brought in bad faith. Cf. International Union of Petroleum and Industrial Workers v. Western Industrial Maintenance, Inc., 707 F.2d 425, 428 (9th Cir.1983) (applying common law rule that fees may be awarded for suits brought in bad faith). Alternatively, Carpenters Southern suggests that this court adopt the standards set forth in Christiansburg Garment Company v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978), and allow fees to defendant employers only where the action was "frivolous, unreasonable, or without foundation." Christiansburg concerned the award of attorney's fees in actions brought under Title VII of the Civil Rights Act. We decline to adopt the Christiansburg standard. It, too, impermissibly narrows the scope of the statute with which we are concerned. See Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1264-66 & n. 24 (5th Cir.1980).
 
 
 29
 We conclude that the criteria described in Hummell should guide a court in determining whether to award fees to either plaintiffs or defendants under section 1132(g)(1). Such factors clearly permit consideration of the circumstances that Carpenters Southern argues should be controlling. No one of the Hummell factors, however, is necessarily decisive, and some may not be pertinent in a given case. Iron Workers, 624 F.2d at 1266.
 
 
 30
 In any event, we believe that Marquardt v. North American Car Corp., 652 F.2d 715 (7th Cir.1981), convincingly explains why trustees of benefit plans are more likely than employers to recover fees when the guidelines stated in Hummell are applied.[11] First, the "culpability" of a losing trustee differs from that of a losing employer. While the latter has necessarily violated ERISA, the former may only be in error or unable to prove his case. Second, a defendant employer will often be able to pay its own fees, while the plaintiff-trustee may find it difficult to pay without injuring the beneficiaries of the plan. Consideration of the third factor, deterrence, also suggests that fee awards very likely will be less often justified for employers than for trustees. If defendant employers face the prospect of paying attorney's fees for successful plaintiffs, they will have added incentive to comply with ERISA. Plaintiff-trustees, on the other hand, generally will be sufficiently deterred from instituting vexatious suits by the absence of personal gain therefrom and the likelihood that they will have to pay their own fees and costs should they not prevail. See Marquardt, 652 F.2d at 720-21.
 
 
 31
 The fourth and fifth factors also point in the same direction. A successful suit to enforce ERISA will generally benefit the plan's participants, and the resolution of significant legal questions under ERISA will often depend on a plaintiff's initiative in bringing suit. See id. at 721. Finally, in evaluating the fifth factor, the relative merits of the parties' positions, courts should be careful neither to penalize trustees for seeking to enforce employer obligations under ERISA nor to encourage employers to be indifferent to their obligations.
 
 
 32
 Thus, we hold as follows: Defendant employers may be awarded attorney's fees under 29 U.S.C. Sec. 1132(g)(1). In determining whether to award fees to either plaintiffs or defendants, courts should consider the guidelines stated in Hummell. Courts should also note the considerations expressed in Marquardt and recognize that the Hummell factors very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs. In this case we are unable to determine whether the award of fees constituted an abuse of discretion because the district court did not consider Marquardt in awarding fees to the defendant employer. Accordingly, we vacate the fee award and remand this case for reconsideration of its award in light of Marquardt.
 
 V.
 ATTORNEY'S FEES AND COSTS ON APPEAL
 
 33
 Russell argues that he is entitled to an award of attorney's fees for costs incurred in this appeal. It is true that statutory provisions for attorney's fees generally allow the award of fees for the costs of appeal. See, e.g., Newhouse v. Robert's Ilima Tours, Inc., 708 F.2d 436, 441 (9th Cir.1983) (Fair Labor Standards Act); Shelter Framing Corp. v. Pension Benefit Guaranty Corp., 705 F.2d 1502, 1515 (9th Cir.1983) (ERISA suits under 29 U.S.C. Sec. 1451), prob. juris. noted sub nom. Oregon-Washingtion Carpenter-Employers Trust Fund v. R.A. Gray & Co., --- U.S. ----, 104 S.Ct. 271, --- L.Ed.2d ---- (1983); Moore v. Jas. H. Matthews & Co., 682 F.2d 830, 839 & n. 11 (9th Cir.1982) (Clayton Act). We hold that section 1132(g)(1) allows the recovery of attorney's fees and costs incurred in an appeal. However, unless Russell prevails on remand under the Marquardt standard, he will not be entitled to such an award here.[12]
 
 
 34
 Russell also seeks an award of damages and double costs pursuant to Rule 38 of the Federal Rules of Appellate Procedure. We reject this request because we do not believe that this appeal by Carpenters Southern is frivolous.
 
 
 35
 The order granting summary judgment is AFFIRMED and the award of attorney's fees is VACATED. The case is REMANDED for proceedings in accordance with this opinion.
 
 
 
 [1]
 Under California law, contractors must be licensed by the Contractors' State License Board. Cal.Bus. & Prof.Code Secs. 7026, 7028.5. A business may be licensed by affiliating with a "qualifying individual" who has his own contracting license. Id. Secs. 7068, 7068.1
 
 
 [2]
 Section 8(f) allows an employer in the construction industry to sign a collective bargaining agreement before the union achieves majority status. Such "prehire" agreements may be repudiated by an employer until the union attains majority support, but until repudiated, a prehire agreement is fully enforceable. See Jim McNeff, Inc. v. Todd, --- U.S. ----, 103 S.Ct. 1753, 1759, 75 L.Ed.2d 830 (1983)
 
 
 [3]
 Two business entities may both be bound to a collective bargaining agreement if one is the "alter ego" of the other. E.g., J.M. Tanaka Constr., Inc. v. NLRB, 675 F.2d 1029, 1033-35 (9th Cir.1982)
 In addition, an employer who is found to be a "successor" to a predecessor employer must recognize and bargain with the representative of employees covered by a collective bargaining agreement. NLRB v. World Evangelism, Inc., 656 F.2d 1349, 1354 (9th Cir.1981). A "successor" employer is not bound by the substantive terms of its predecessor's collective bargaining agreement unless it agrees to or assumes the contract. Id. at 1355; Audit Services, Inc. v. Rolfson, 641 F.2d 757, 763 (9th Cir.1981).
 
 
 [4]
 The contract indicates that Russell signed the agreement on behalf of Larry Russell Construction. Section 7 of the contract provides:
 This Memorandum Agreement shall be binding upon the heirs, executors, administrators, purchasers and assigns of the Contractor and shall be binding on the Contractor regardless of a change of entity, name or association or joint venture and shall bind any entity or venture who is a principal, financially associated with the Contractor.
 
 
 [5]
 Carpenters Southern conceded at oral argument that it has no claim for benefit contributions after July 1, 1981, the date on which the union disclaimed interest in representing the employees of Russell Construction. Carpenters Southern asserts, however, that Russell remains obligated for benefit contributions for the period before July 1, 1981
 
 
 [6]
 The district court made an uncontested finding of fact that:
 Russell Construction openly and notoriously operated and continues to operate as a wholly nonunion business. Russell Construction avoided all union jobs, dealing only with nonunion projects and jobsites. In many instances, Russell Construction was hired solely on the basis that it was nonunion. Russell Construction held itself out to its employees and customers as being a nonunion contractor. Russell Construction's reputation in the field between 1977 and 1981 was that it was a nonunion business.
 E.R. 252.
 
 
 [7]
 The statutory basis for an employer's obligation is in section 515 of ERISA, 29 U.S.C. Sec. 1145. It provides:
 Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
 29 U.S.C. Sec. 1145.
 This section was added to ERISA as part of the Multiemployer Pension Plan Amendments Act of 1980, Pub.L. 96-364, Sec. 306(a), 94 Stat. 1208, 1295 (1980).
 
 
 [8]
 The 1980 amendments to ERISA added subsection (g)(2) to 29 U.S.C. Sec. 1132. Multiemployer Pension Plan Amendments Act of 1980, Pub.L. No. 96-364, Sec. 306(b), 94 Stat. 1208, 1295 (1980). Congress intended that Sec. 1132(g)(2) would make fee awards mandatory when a fiduciary prevails in an action to enforce Sec. 1145. See generally Central States, Southeast and Southwest Areas Pension Fund v. Alco Express Co., 522 F.Supp. 919, 921-23, 925-28 (E.D.Mich.1981) (discussing purpose and legislative history of amendments to Sec. 1132). Nothing in the legislative history expresses an intent to deny courts the discretion to award fees to defendants that prevail in actions under Sec. 1145
 
 
 [9]
 Other circuits have endorsed similar guidelines. See Fine v. Semet, 699 F.2d 1091, 1095 (11th Cir.1983); Marquardt v. North American Car Corp., 652 F.2d 715, 717 (7th Cir.1981); Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir.1980); Eaves v. Penn, 587 F.2d 453, 465 (10th Cir.1978)
 In determining the amount of a fee award under Sec. 1132(g)(1), the district court should consider the twelve factors set forth in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Sapper, 704 F.2d at 1073.
 
 
 [10]
 Carpenters Southern's reliance on Todd v. Benal Concrete Constr. Co., 710 F.2d 581 (9th Cir.1983), cert. denied --- U.S. ----, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984) is misplaced. In Todd, trustees sought to recover contributions for trust funds created under the Labor Management Relations Act. The district court awarded summary judgment to the employer, but denied his request for attorney's fees. The employer argued that an award was justified because the suit had been brought in bad faith. We found that the district court did not abuse its discretion in denying the request for fees. 710 F.2d at 584. Todd did not involve the statutory fee provisions under ERISA and it does not suggest that a showing of bad faith is required for an award of fees to defendants under 29 U.S.C. Sec. 1132(g)(1)
 
 
 [11]
 Marquardt considered the circumstances in which the denial of fees to a prevailing defendant would constitute an abuse of discretion. See 652 F.2d at 719, 721 n. 7. We believe, however, that the discussion in Marquardt also provides useful guidance for determining whether to award fees to defendants
 
 
 [12]
 Should the district court determine that a fee award is appropriate in this case, it shall also include an award for fees and costs incurred in this appeal