**UNITED BROTHERHOOD OF CARPENTERS AND JOINTERS OF AMERICA, AFL–CIO LOCAL 2247, and Trustees for the Alaska Carpenters Health and Security Fund, Retirement Fund, and Apprenticeship and Training Fund, Plaintiffs-Appellants,**

v.

**ENDICOTT ENTERPRISES, INC., Defendant-Appellee.**

No. 85–3865.

United States Court of Appeals, Ninth Circuit.

Jan. 26, 1987.

Jermain, Dunnagan & Owens, Randall Simpson, Anchorage, Alaska, for the plaintiffs-appellants.

John F. Clough, III, Juneau, Alaska, for the defendant-appellee.

WIGGINS, Circuit Judge, dissenting:

I cannot agree with the majority's holding—the first in this circuit—that an employer may repudiate a "pre-hire" labor agreement[1] merely by acting inconsistently with the terms of the agreement. Because this rule will create great uncertainty as to if and when an employer has repudiated a pre-hire agreement, I respectfully dissent.

The majority opinion, 806 F.2d 918 (9th Cir.1986), provides both a detailed factual background of the case and an overview of the law regarding pre-hire agreements, and I do not duplicate its efforts. Endicott Enterprises, Inc. (Endicott) and the United Brotherhood of Carpenters and Joiners of America (Union) entered into a statewide labor agreement. The agreement in part provided that Endicott pay employee fringe benefit contributions to the Union for carpentry work performed for Endicott by subcontractors who were not signatories to a collective bargaining agreement with the Union. In this action the Union seeks employee fringe benefit contributions for non-Union carpentry work performed for Endicott at its Ace Hardware Store site commencing in October 1982.

The majority holds, as a matter of law, that Endicott's actions were "sufficiently bald and open to give the Union notice of Endicott's intent to repudiate." *Id.* at 922. To support its decision the majority lists the following facts: (1) no Union members worked at the Ace Hardware site; (2) Endicott, in violation of the agreement, made no employee fringe benefit contributions for the non-Union carpentry work; (3) the Union knew that Endicott was employing non-Union workers at the site; (4) "the Union itself did not comply with terms of the agreement such as informing Endicott of the names of its stewards"; and (5) Warren Endicott verbally informed the Union in late January 1983 that Endicott would not employ Union workers on the job. *Id.* at 922–23.

Implicit in the majority's decision to deny the Union *any* employee fringe benefit compensation for the Ace Hardware job is the majority's belief that Endicott repudiated before or at the commencement of the job in October 1982. Mr. Endicott's late January 1983 oral statement to the Union that Endicott would not employ Union workers is therefore irrelevant to the majority's holding, because it in no way reflects on the notice provided the Union in October 1982.[2]

The majority also finds significant that the Union itself violated certain terms of the agreement, including the duty to provide Endicott the names of its stewards. But even if a material breach by the Union would excuse Endicott's obligations under the agreement, *see NLRB v. Pacific Erectors, Inc.,* 718 F.2d 1459, 1464 (9th Cir. 1983), these minor breaches are not material.

This leaves what I see to be the actual basis for the majority's decision: its belief that Endicott's "bald and open" hiring of exclusively non-Union workers without making the required employee benefit contributions to the Union gave the Union sufficient notice of Endicott's intent to repudiate. The majority thus establishes that repudiation of pre-hire agreements need not be effected by an express statement indicating an intention not to be bound by the pre-hire agreement, but rather may be inferred from the repudiating party's conduct.

The majority bases its rule permitting repudiation by conduct on dictum in this court's decision in *Todd v. Jim McNeff, Inc.,* 667 F.2d 800, 804 (9th Cir.1982), *aff'd,* 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983), that "in some circumstances noncompliance can be so bald as to put the

---

1. By the term "pre-hire agreement" I mean those construction industry labor agreements permitted by 29 U.S.C. § 158(f).

2. This is not to say that Mr. Endicott's statement is irrelevant to Endicott's repudiation in January 1983. I address this below.

union on notice of the employer's intent to repudiate." The Supreme Court, in affirming our decision, however, specifically declined to state what acts (including those "overtly and completely inconsistent with contractual obligations") would suffice to repudiate a pre-hire agreement, 461 U.S. at 270 n. 11, 103 S.Ct. at 1759 n. 11, and we have subsequently recognized the noncontrolling nature of the *Todd* dictum, *see Roberts v. Ayala*, 709 F.2d 520, 521 n. 1 (9th Cir.1983). Proceeding from this weak precedential base the majority adopts the holding of *Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan v. Harkins Construction & Equipment Co.*, 733 F.2d 1321, 1326 (8th Cir.1984), that "open and notorious acts by one party, known to the other, which are inconsistent with the continuance of the contract" constitute sufficient repudiation, while "[a] mere breach of contract ordinarily will not suffice to establish repudiation."

This rule permitting repudiation of pre-hire agreements by conduct is ill-advised. Distinguishing between "mere" breaches of a pre-hire agreement and actions "inconsistent with the continuance" of the agreement injects unnecessary uncertainty into this area of labor law. Almost certainly litigation over this issue will ensue for years in this court, leaving many parties to pre-hire agreements unsure of their status under those agreements. For example, many actions "inconsistent with the continuance" of pre-hire agreements are not instantaneous events, but rather occur over time. Under the rule the majority adopts a court with perfect hindsight might conclude that the totality of an employer's breaches constituted repudiation, but would be left with the difficult question of precisely when the repudiation occurred. The parties in the course of their dealings are left to speculate as to the agreement's viability after each particular breach.

Some of the difficulties of a ruling permitting repudiation by conduct are illus-

trated by this case.[3] Applying the *Harkins Construction* test is by no means easy. While I agree with the majority that the Union had clear notice of Endicott's noncompliance with the agreement, this does not mean that the Union had clear notice of Endicott's intent to repudiate the agreement. The majority believes that Endicott manifested its intent to repudiate the agreement in October 1982. The record, however, reveals that Mr. Endicott himself was not sure even in late January 1983 whether Endicott "was going to the union on the job." 806 F.2d at 920. Moreover, the majority, by considering Endicott's nonpayment of employee fringe benefits *after* the commencement of the job (at which time, the majority holds, Endicott repudiated), in effect permits retroactive repudiation. This makes little sense.

I would have more sympathy for a rule permitting repudiation by conduct if the uncertainty that the rule created were counterbalanced by the promotion of some federal labor policy. The employer, however, reaps the benefit of the agreement's assurance of a steady supply of skilled labor, protection against labor unrest, and predictable labor costs. *Todd*, 667 F.2d at 802. It does not seem to me unfair to hold the employer to the terms of the agreement, which the employer bargained for, until the employer expressly repudiates.

While I reject the majority's finding of repudiation by conduct, I do believe that Mr. Endicott's undisputed late January 1983 oral statement to the Union, as a matter of law, establishes Endicott's repudiation of the pre-hire agreement. Parties may orally restrict the application of written labor agreements to particular bargaining units, *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 568 (9th Cir.1984), and other circuits have permitted express oral repudiation of pre-hire agreements, *see New Mexico Dist. Council of Carpenters & Joiners v. Jor-*

---

**3.** I use the facts of this case to show that any rule permitting repudiation merely on the basis of the repudiating party's conduct is ill-advised; I do not mean to indicate that here Endicott's conduct was insufficiently "open and notorious" while in other cases an employer's conduct may be.

*dan & Nobles Constr. Co.*, 802 F.2d 1253, 1256 (10th Cir.1986); *Painters Local Union No. 164 v. Epley*, 764 F.2d 1509 (11th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986); *International Ass'n of Bridge, Structural & Ornamental Iron Workers, Local Union No. 103 v. Higdon Constr. Co.*, 739 F.2d 280 (7th Cir.1984). Mr. Endicott's statement that Endicott would not employ Union workers at the Ace Hardware site, although evidently devoid of terms such as "repudiate" or "terminate," provided the Union with fair notice of Endicott's intent not to be bound by the agreement. It therefore constitutes repudiation.

A rule requiring express repudiation by statement provides the parties to a pre-hire agreement greater certainty of their status under the agreement than does a rule permitting repudiation by conduct alone. Leaving a party to infer intent to repudiate from another party's conduct invites confusion; requiring the repudiating party to state to the other its intent to repudiate significantly reduces this confusion, while imposing only a minor burden on the repudiating party. Moreover, because statements, unlike many actions, are discrete events, they permit the court and the parties to set with greater certainty the precise moment of repudiation.[4]

Because the record does not support a finding of Endicott's repudiation until late January 1983, the foundation for the district court's denial of relief to the Union for employee fringe benefit payments until that time is undermined. I dissent on this basis.

As a postscript I note that the result of this case could have been quite different. Although, for reasons unknown to me, the Union did not raise the issue, the agreement itself apparently expressly provides that written notice of termination must be given for the termination to be effective.[5] It is established law that where labor agreements provide for a formal notice of termination attempts at termination through other means are ineffective. *See Irwin v. Carpenters Health & Welfare Trust Fund*, 745 F.2d 553, 556 (9th Cir. 1984) ("Where such clear and specific language [regarding written termination] in a labor agreement is at issue, federal courts are uniform in their strict interpretation of such language.");[6] *NLRB v. R.J. Smith Constr. Co.*, 545 F.2d 187, 192 (D.C.Cir. 1976). Even *Harkins Construction*, which the majority cites to establish a rule permitting repudiation by conduct, explicitly recognized that conduct alone could not constitute repudiation where the parties have agreed otherwise. 733 F.2d at 1326 ("Where the prehire contract itself ... contains no provision for a formal notice of termination, open and notorious acts by one party, known to the other, which are inconsistent with the continuance of the contract would, in our view, constitute sufficient notice of repudiation."); *accord Local 257, Int'l Bhd. of Elec. Workers v. Grimm*, 786 F.2d 342, 346 (8th Cir.1986).

Were I writing the opinion of the court I would be loath to decide for the Union on the basis of an argument to which Endicott

---

**4.** By proposing a rule requiring express repudiation by statement I do not suggest that parties' conduct is entirely irrelevant to the repudiation issue. If litigants dispute the occurrence of a statement, for instance, their conduct may be probative of the statement's occurrence.

**5.** The "Compliance Agreement Section" provides: "This Agreement is effective through June 30, 1984 and shall continue thereafter from year to year, unless either party delivers to the other party a written notice of termination of at least sixty (60) days prior to the anniversary of the above termination." Excerpt of Record at 407.

**6.** *Carpenters Southern California Administrative Corp. v. Russell*, 726 F.2d 1410 (9th Cir.1984), is not to the contrary. There this court held the employer's six-year absence from the industry sufficed to terminate a prehire agreement otherwise terminable only in writing. The court relied upon the "unusual" circumstances of the case. *Id.* at 1414. Whatever the validity of the *Carpenters* decision after our decision in *Irwin*, *Carpenter's* "unusual" circumstances distinguish it from the present case.

was given no opportunity to respond. The majority understandably does not consider the agreement's express termination provision. Therefore, its holding permitting repudiation of pre-hire agreements by conduct should be limited to those agreements containing no provision for formal notice of termination.