**ANITA FOUNDATIONS INC., et al., Plaintiffs,**

v.

**ILGWU NATIONAL RETIREMENT FUND, et al., Defendants.**

**FASHION AFFILIATES, INC., Plaintiff,**

v.

**ILGWU NATIONAL RETIREMENT FUND, Defendant.**

Nos. 87 Civ. 7242 (KC), 88 Civ. 1716 (KC).

United States District Court, S.D. New York.

Aug. 21, 1989.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for Anita Foundations, Inc.

Milgrim, Thomajan & Lee, New York City, Arnold & Porter, Washington, D.C., for ILGWU Nat. Retirement Fund.

Miller, Hamilton, Snider, Odom & Bridgeman, Washington, D.C., Pontani & Lieberman, New York City, for Fashion Affiliates, Inc.

## OPINION AND ORDER

CONBOY, District Judge:

This is an application for attorney's fees under Section 4301(e) of ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. § 1451(e).

### Background

The Fund defendants sought to void final settlements and releases made with the plaintiffs concerning each's respective withdrawal liability and to collect additional sums from each based on a revised method of calculation set out in a Ninth Circuit decision, *Trustees of the Amalgamated Insurance Fund v. Geltman Industries, Inc.,* 784 F.2d 926 (9th Cir.), *cert. denied,* 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986). On April 20, 1989, we granted the plaintiffs' motions for summary judgment barring the Fund from opening the final settlements. 710 F.Supp. 983, 987–988 (S.D.N.Y.1989).

The grounds underlying the grant of summary judgment were numerous. First, we rejected outright the application of the retroactivity doctrine to these settlements because that doctrine only applies to matters that are open and pending when a decision making new law is announced. We also rejected the Fund's contention that the agreements were voidable on the theory of mutual mistake of law. We found that all parties knew that there had been no judicial interpretation of how the subsections under ERISA Section 4225, 29 U.S.C. § 1405, interrelated and, thus, that the state of the law at the time was unclear. And, even if there had been a mutual mistake (which we determined had not occurred), the Fund could not meet its burden of establishing that it did not bear the risk of the mistake. All of the parties bore the risk that a subsequent judicial resolution of the uncertainty might be adverse to the positions taken by each in the settlement. In addition, we found that since parties cannot reopen settlements made in reliance on a judicial decision that is subsequently overruled, settlements made when the law was unclear should not be placed on different footing. We invoked the strong public policy in favor of out of court settlements, which would be undermined if these settlements were reopened. Furthermore, the equities strongly favored the plaintiffs here.

Plaintiffs in *Anita* assert that they were forced to initiate this declaratory action and to file a lengthy, and somewhat complicated, summary judgment motion and opposition papers to the Fund's cross-motion. The plaintiffs also assert that the decision they obtained in this action will help plaintiffs in more than twenty other collection actions similar to this currently pending. They contend that they are small businessmen who did nothing "to bring these expensive proceedings down on their heads." Affidavit of Norman Solovay, sworn to May 17, 1989, at ¶ 10. The initial fee reimbursement request of *Anita* was $194,032.33.

Plaintiff in *Fashion Affiliates* is in a somewhat different situation. It originally filed its complaint in the District Court in Massachusetts based on diversity of citizenship. The Massachusetts court ultimately determined that the action was not predicated on diversity but on a federal statute and transferred the case here on venue grounds. Accordingly, it does not seek to recover for the fees incurred while the case was not pending in our Court regarding the jurisdictional aspect of the case; however, it does believe that it, too, is entitled to fees that it incurred in trying to ward off the Fund on the ERISA claim before the suit was filed. The total this plaintiff seeks is $27,290.60. This plaintiff believes that the fund postponed the twenty other collection actions pending the outcome of this case. Affidavit of Lester Bridgeman, sworn to May 17, 1989, at ¶ 9, and it appears from the Fund's papers that it did, in fact, postpone the actions of approximately 30 (not 20) other employers pending the outcome of this case.

The Fund defendants oppose the applications for attorneys' fees. Their principal theory is that the Fund should not be required to pay the plaintiffs' attorneys' fees because the Fund's trustees, who were acting on the advice of counsel, were simply

complying with "their fiduciary duty to pursue substantial, and potentially viable, claims for withdrawal liability." Defendants' Opposition to Plaintiff's Application for Attorneys' Fees at 1. ("Defendants' Memo.") They also state that although they knew that there was a possibility that they would not prevail here, they believed that they could not abandon the potential claims without a judicial decision. They further believe that pension plans "must not be discouraged from pursuing legitimate claims—even claims that ultimately do not prevail—by the threat of an employer attorneys' fees award." *Id.* at 2. In any event, they asserted that the initial fee request here was "bloated" and disproportionate to the work required.

The Fund states that after *Geltman* they sought the advice of counsel to determine to whom this new interpretation should be applied: (1) newly withdrawn employers, (2) employers who withdrew before *Geltman* was announced but whose cases had not yet been resolved, (3) employers (like the plaintiffs) with who the Fund had reached settlements prior to *Geltman,* and (4) employers whose liability had previously been established by a final judgment. Defendants' Memo. at 3–4. They were advised by counsel that they should seek to have *Geltman* applied in all cases except those where the employers were protected by the doctrine of res judicata (thus, all but category four). *Id.* at 5. However, counsel did express doubts about the viability of category three cases in its letter of April 23, 1987 to the Fund. Talking about res judicata and final decisions, counsel stated "[h]owever, judgments by default, *stipulation or agreement* ... are also judgements on the merits that have become final when all appeal possibilities have been exhausted." Defendant's Memo., Ex. C, Letter of Arnold & Porter to Fund, April 23, 1987, at 6 (emphasis added). Counsel's advice purported to be based on the general principles of fiduciary duty as well as a desire to

moot assertions from the different categories of employers of "discrimination and detrimental reliance." *Id.*

### The Law Governing Fee Requests

■■■ The parties appear to agree that the standard to be applied under ERISA Section 4301(e), 29 U.S.C. § 1451(e) (the specific section that governs the fee requests here) is the same as the standard under ERISA Section 502(g)(1), 29 U.S.C. § 1132(g)(1), (the general ERISA provision covering fees).[1] *E.g., Central States, Southeast and Southwest Areas Pension Fund v. 888 Corp.,* 813 F.2d 760, 767 (6th Cir.1987); *Miles v. New York State Teamsters Conference Pension and Retirement Fund,* 698 F.2d 593, 602 n. 9 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). The factors to be considered are:

(1) the degree of the opposing (losing) party's culpability or bad faith;

(2) the relative merits of the parties' contentions;

(3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;

(4) whether the party requesting fees sought to benefit all participants or beneficiaries in a plan or to resolve significant legal questions; and

(5) the ability of the opposing party to satisfy an award of attorneys' fees.

No one of these five factors is decisive and some may be irrelevant. *Carpenters Southern California Administrative Corp. v. Russell,* 726 F.2d 1410, 1416 (9th Cir.1984). We will endeavor to discuss each factor in this order below, providing only the main and essential arguments of both sides.

### (1) *The degree of the opposing party's culpability or bad faith*

The plaintiffs claim that, as they believed all along and as we subsequently found,

---

1. We say "appear to agree" because the defendants also contend that a stricter standard applies to prevailing employers than prevailing funds; however, they still analyze the facts here under the enumerated five factors. Furthermore, from all of the cases cited it appears that employers are only held to a stricter standard in the Third Circuit and perhaps the Ninth Circuit, but in the First, Sixth and Tenth Circuits, the same five factor test is applied to prevailing employers. There is no relevant Second Circuit authority on this question.

the Fund's attempt to collect additional withdrawal liability from these plaintiffs was not supported by any valid legal claim under any reasonable analysis.

The defendants contend that they did not act in bad faith, but rather on the advice of counsel who advised them, among other things, that they had a fiduciary duty to pursue the claims against these plaintiffs. This fiduciary duty is derived from the idea that the trustees must act for "the exclusive purpose of ... providing benefits...." ERISA section 404(a)(1) [29 U.S.C. § 1104(a)(1)]. However, in maximizing benefits, they do have to act with the care, skill, diligence and prudence of a reasonably prudent trustee in the same circumstances. Thus, the question is whether it was reasonable to pursue these claims against these plaintiffs.

The Fund believes that it has a duty to pursue potentially viable claims despite the fact that the other party has potential defenses that may ultimately prevail. Defendants' Memo. at 12. The Fund contends, citing the Restatement (Second) of Trusts at § 177, Comment C, that the only times that it is "unreasonable" for the trustee to bring suit to collect monies are (a) when the expenses involved would be too high or (b) the probability is that the action would be unsuccessful or (c) that even if successful, the claim would be uncollectible. They claim that the probability factor requires a consideration of whether the action would be futile, citing another section of the Restatement. Defendants' Memo. at 14. Finally, they also claim that the " 'culpability of a losing trustee differs from that of a losing employer.' " Defendants' Memo. at 15 (quoting *Carpenters Southern California Administrative Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir.1984)). It is clear though that when acting to maximize the withdrawal liability, the trustees' position must be supported by the applicable law, and, accordingly, it follows that the amount of culpability increases commensurate with the weaknesses and deficiencies of that position. *See Cuyamaca Meats, Inc. v. San Diego and Imperial Counties Butchers' and Food Employers' Pension Trust Fund*, 827 F.2d 491, 500 (9th Cir.1987),

*cert. denied,* —— U.S. ——, 108 S.Ct. 1474, 99 L.Ed.2d 703 (1988).

The plaintiffs believe that the fiduciary duty assertion is a "red herring intended to deflect attention from the five factor test." Anita Plaintiffs' Reply Memo. at 2. They also contend, citing a hornbook on trusts and a Second Circuit case, that where a trustee makes a mistake of law it is no defense that he relied upon the advice of competent counsel. 3 A. Scott and W. Fratcher, *The Law of Trusts* § 201 at 221 (4th ed. 1987); *Donovan v. Bierwirth,* 680 F.2d 263, 272 (2d Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1980). They further assert that bad faith is not necessary for an award of attorney's fees, citing extensive case authority of other circuits. Anita Plaintiffs' Reply Memo. at 9 (citing, *inter alia, Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 590 (9th Cir.1984); *T.I.M.E.–DC, Inc. v. IAM National Pension Fund,* 616 F.Supp. 400, 404 (D.D.C.1985)). Rather, they claim that culpability is determined by the lack of merit of the lawsuit and that here there was no reasonable basis in law or fact for the Fund to unilaterally abrogate valid settlements and demand additional withdrawal liability.

They also contend that the Fund's desire to "avoid the perception of 'discriminatory treatment,' " Anita Plaintiffs' Reply Memo. at 5, is nonsense because when plaintiffs sought to obtain the names of similarly situated employers who might want to join in this action, not only were they rebuffed by defendants' counsel, but defendants' counsel also made agreements with those 30 or so (by defendants' calculation) unnamed employers that they would hold their claims in abeyance pending this action. *Id.* Thus, the argument goes, the entire costs of this litigation were borne only by these plaintiffs yet all other withdrawn employers received the fruits of their efforts.

The plaintiffs believe that even if employers are held to a stricter standard than plans, *see Dorn's Transportation, Inc. v. Teamsters Pension Trust Fund,* 799 F.2d

45, 50 n. 6 (3d Cir.1986), they are still entitled to fees in this action.

On this first factor, we conclude that the plaintiffs position is convincing; the Fund's actions in seeking additional amounts of withdrawal liability from the plaintiffs were unreasonable.

### (2) *The relative merits of the parties' contentions*

This factor is directly related to the "culpability" factor discussed above. We have concluded that the retroactivity claim had no merit and that the plaintiffs were forced to spend large amounts of time and money researching this issue in order to defeat the defendants' summary judgment motion. The defendants state that the Court should consider the fact that the issues here were novel, in determining the relative merits. Although in some respects novel, in the context of a final, closed settlement, they were wholly without merit. The Fund did not have a "reasonable" claim as to these plaintiffs. Therefore, even under the more stringent standard set out in *Dorn's Transportation, Inc. v. Teamsters Pension Trust Fund,* 799 F.2d 45, 50 (3d Cir.1986), plaintiffs' application is meritorious.

### (3) *Whether an award of fees against the opposing party would deter others from acting in similar circumstances*

It appears that the decision that the plaintiffs obtained here will have the effect of deterring the Fund from pursuing similar claims against other employers. In fact, the defendants admit that they reached an agreement with approximately 30 other employers to postpone the claims against them pending the outcome of this case. It is not clear if the defendants now intend to pursue these other cases, but we believe that they are at least reconsidering their merits. The Fund claims that an award of attorneys' fees here would deter the Fund's trustees and administrators from fulfilling their duty to maximize withdrawal liability. The outcome of this case, however, must weigh into their analysis as to whether it would be reasonable to pursue other such claims.

### (4) *Whether the party requesting fees sought to benefit all participants or beneficiaries in a plan or to resolve significant legal questions*

The question that arises here is what is a "plan participant." The defendants contend, and the plaintiffs seem to concede, that the plaintiffs, employers and contributors all, are not "plan participants." The defendants thus contend that this factor weighs in their favor. The plaintiffs state that this simply means that the factor is inapplicable and that it certainly does not mean as the defendants imply, that only prevailing funds or plan participants can be awarded fees, and not employers. We agree with the plaintiffs, and adopt the positions taken by several courts, who using this five factor test, have refused to distinguish between prevailing funds and participants on the one hand and prevailing employers on the other. *See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. 888 Corp.,* 813 F.2d 760, 767 (6th Cir.1987); *Gray v. New England Telephone and Telegraph Co.,* 792 F.2d 251, 258 (1st Cir.1986); *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 n. 24 (5th Cir.1980).

### (5) *The ability of the opposing party to satisfy an award of attorneys' fees*

The Fund contends that while it has the literal ability to satisfy the fee award, it is also true that it lacks sufficient resources to pay all benefit obligations accrued to date. It claims that any attorneys' fees award would ultimately be paid by increasing the withdrawal liability of other employers or by diminishing the amount available for payment to the participants. Defendants' Memo. at 24. Therefore, they conclude, this factor favors the Fund.

Plaintiffs contend that in the period of time before they brought this suit they warned the Fund that if they had to go to court, they would seek attorneys' fees. With this warning went a lengthy memo outlining why the plaintiffs felt that the Funds' claims were untenable. The Fund, foolishly, gave the plaintiffs short shrift.

Other courts have awarded prevailing parties' attorney's fees to be paid out of such a Fund. *See, e.g., Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 872 (2d Cir.1987), *on remand,* 1988 WL 80170 (S.D.N.Y.1988) (J. Carter awarded $416,191.30 in attorneys' fees after a trial), *reconsideration denied,* 697 F.Supp. 642 (S.D.N.Y.1988). Accordingly, we believe that this factor favors the plaintiff.

*The specific fee requests*

 We note at the outset of this analysis that the defendants claim that the *Fashion Affiliates* plaintiff essentially rode on the coattails of the *Anita* plaintiffs, submitting brief supporting and opposing papers, and that they therefore do not merit the $27,000 that they seek. They also claim that there are a few instances where the plaintiff did not segregate the fees from the Massachusetts proceeding. These, however, only amount to 1.75 hours of attorney's time.

As to the *Anita* plaintiffs, the defendants claim the original fee request was "bloated" and "excessive," a "princely sum" reached by "imaginative billing practices." They point out that no discovery was taken and that the issues of fact were not disputed. They also point to mistakes made in the time sheets, and direct the Court's attention to the 17 entries for time spent preparing bills and contend that even if a client has to pay for this, the Fund should not have to.

There is also a dispute as to whether fees incurred (about $9,000) in meeting other potential employer plaintiffs, and preparing retainer letters are appropriate. The plaintiffs contend that the defendants bear the direct responsibility for this because the plaintiffs sought to have the twenty or thirty other employers join this action so as to be able to spread the cost of this litigation among more employers, but, as already noted, the defendants would not give them the names of these potential employer plaintiffs, thus frustrating their efforts.

After a systematic and comprehensive review of the documentation submitted by plaintiffs to support the fee award request, the Court conducted a hearing on the matter on July 27, 1989. At the invitation of the Court, the *Anita* plaintiffs have submitted a substantially reduced fee award request of $146,375.83 (Letter of Plaintiffs' counsel to the Court, dated August 4, 1989, with Exhibits). The defendant Fund has submitted no response to this letter.

The Court concludes that under the analysis performed above an award of attorneys' fees to the *Anita* plaintiffs is both authorized and warranted. However, after careful review of the supplemental submission, we find that a reasonable award to the *Anita* plaintiffs, based upon the submissions made, is $131,738.25. The Court determines that a reasonable and warranted award to the *Fashion Affiliates* plaintiff is $24,300.00. Therefore, it is hereby ordered that judgments in these amounts be entered against the Fund, and in favor of these plaintiffs, in the aforesaid sums. The parties are directed to submit a judgment accordingly.

SO ORDERED.