**DORN'S TRANSPORTATION, INC., and Oneida Motor Freight, Inc., Appellees,**

v.

**TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA AND VICINITY, Appellant.**

No. 85–5006.

United States Court of Appeals, Third Circuit.

Submitted June 11, 1986.

Decided Aug. 22, 1986.

Lester M. Bridgeman, Louis E. Emery, Bridgeman & Urbanczyk, Washington, D.C., for appellees.

Paul A. Friedman, Cohn & Lifland, Saddle Brook, N.J., for appellant.

Before HUNTER, BECKER, Circuit Judges, and HUYETT, District Judge.*

## OPINION SUR MOTION OF ATTORNEYS' FEES

BECKER, Circuit Judge.

This opinion addresses a motion for attorneys' fees made pursuant to 29 U.S.C. § 1451(e), the fee-shifting provision of the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. § 1381 *et seq.*, which modified the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The motion papers require us to determine the standard for an award of attorneys' fees under MPPAA to employers who prevail in a suit seeking a determination of their withdrawal liability thereunder. The motion was filed by Dorn's Transportation, Inc. ("Dorn's") and Oneida Motor Freight, Inc. ("Oneida") to recover attorneys' fees and expenses in connection with an appeal to this court. In that appeal, we affirmed the district court's grant of summary judgment for Dorn's and Oneida and against the Teamsters Pension Trust Fund of Philadelphia and Vicinity ("the Plan"), thus absolving Dorn's and Oneida of withdrawal liability. Our opinion is reported at 787 F.2d 897 (3d Cir.1986).

Dorn's and Oneida contend that the standard for reviewing their application for attorneys' fees should be the same as that applied to prevailing plaintiffs in civil rights actions, *see* 42 U.S.C. § 1988, under which attorney's fees are awarded almost as a matter of course. We conclude, however, that the civil rights attorneys' fees standard for prevailing plaintiffs is not the proper one for a prevailing employer under MPPAA. Instead, we adopt the test established in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), for prevailing defendants in civil rights actions, and hold that a prevailing employer is to be awarded attorneys' fees under MPPAA only if the underlying claim against it was frivolous, unreasonable, or without foundation. Applying the *Christiansburg* test, we conclude that Dorn's and Oneida are not entitled to an award of attorneys' fees and expenses.

### I.

The facts and procedural history of the underlying litigation are set forth in our opinion on the merits and need only be summarized. Dorn's, a motor freight carrier, was a contributing member of the Plan, which was a qualified ERISA plan. When Dorn's closed its terminal in Pennsauken, New Jersey, Oneida contracted to buy all of Dorn's outstanding stock. Oneida also offered employment to all twelve Dorn's employees at the Pennsauken facility,[1] and ten accepted. All ten were union members on whose behalf Dorn's had made contributions to the Plan under a collective bargaining agreement. Because Oneida had a virtually identical agreement with the Plan, payments continued to be made on behalf of the ten employees.

A hitch in the stock sale transaction occurred when Oneida learned that Dorn's faced potential withdrawal liability to the Plan for which Oneida might be jointly liable under 29 U.S.C. § 1301. When Oneida therefore refused to pay the agreed-upon price for the outstanding Dorn's stock, legal action ensued. Eventually, the two companies reached an accommodation and the sale was consummated. The Plan later notified Dorn's that it had assessed the company over $315,000 in withdrawal liability. Dorn's and Oneida thereupon brought an action for a declaratory judgment that Dorn's was not subject to withdrawal liability under the circumstances.

The district court granted summary judgment for Dorn's and Oneida on the ground that under two sections of the MPPAA, 29 U.S.C. §§ 1301 and 1398, no withdrawal had taken place. The court also denied the Plan's motion for additional discovery on the question whether the

---

* Honorable Daniel H. Huyett, 3rd, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Dorn's had other terminals, but the matter concerned only the Pennsauken facility.

Dorn's stock sale transaction had been *bona fide* and arm's length, as required by 29 U.S.C. § 1392. According to the Plan, this evidence was crucial because, unless the transaction had been conducted in good faith, Dorn's could not be exempt from withdrawal liability.

On appeal, we affirmed the judgment of the district court. The appeal presented the question whether, under MPPAA, an employer-member of an ERISA pension plan may be assessed withdrawal liability when it sells all of its stock to another employer that assumes the operations of the corporate seller, employs most of the seller's employees, and, under its independent collective bargaining agreement with the same local union, continues to make payments to the same pension plan as the seller did. In what we described as "the unusual circumstances" of the case, 787 F.2d at 898, in which the purchasing company's agreement concerning payments to the Plan was identical to that of the seller, we held that Dorn's was exempt from liability under 29 U.S.C. § 1398. *Id.* at 902. We did not decide whether the § 1398 exemption from withdrawal would apply if a buyer and seller had different agreements with the Plan. We also limited our holding to the § 1398 ground, leaving for another day "the correctness of the district court's problematic holding with respect to § 1301." *Id.* at 900.[2]

After construing the good faith requirement of § 1392, we further held that the district court's denial of additional discovery on the issue of *bona fides* had been correct, for since Oneida was unaware of any attempt to escape withdrawal liability, and even refused to pay the purchase price when it discovered that withdrawal liability might be assessed against Dorn's, the "principal purpose of the transaction" as a whole could not have been to escape liabili-

ty. Finally, we held that the district court did not err in bypassing arbitration because the issues presented were matters of pure statutory interpretation. In reaching this conclusion, we relied on *I.A.M. National Pension Fund Benefit Plan C v. Stockton TRI Industries*, 727 F.2d 1204, 1210 (D.C. Cir.1984).

Dorn's and Oneida have now moved this court, pursuant to 29 U.S.C. § 1451(e), for an award of costs and expenses, including a reasonable attorneys' fee, incurred in connection with their successful defense of the Plan's appeal from the district court judgment in favor of Dorn's and Oneida. We begin with a determination of the appropriate standard for awarding costs and expenses under § 1451(e) to a prevailing employer.

## II.

■ 29 U.S.C. § 1451(e) provides:

In any action brought under [29 U.S.C. § 1451], the court *may* award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party. (emphasis added).

Section 1451 is a flexible provision, which allows an award to either prevailing plaintiffs or prevailing defendants and leaves the decision whether to grant an award to the discretion of the district court.[3] As such, it is similar to the attorneys' fees provisions in Titles II and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–5(k) & 2000a–3(b); in the Civil Rights Attorneys' Fees Awards Act, 42 U.S.C. § 1988; and in the Emergency School Aid Act of 1972, 20 U.S.C. § 1617. Because of this similarity, Dorn's and Oneida (hereinafter "Dorn's") argue that Congress intended that § 1451 be applied in the same manner

---

2. We suggested, however, that the district court's reading of § 1301, *see* 596 F.Supp. 350, 354–55, may have been erroneous because if § 1301, which is the definitional part of ERISA, "can be used as a withdrawal-escaping device, the other exemptions may thus be rendered nugatory." 787 F.2d at 900 n. 4.

3. By contrast, some statutes make fee awards mandatory for prevailing plaintiffs, while others make awards permissive but limit them to certain parties, usually prevailing plaintiffs. For a list of such statutes, *see Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415–16 nn. 5–6, 98 S.Ct. 694, 697 nn. 5–6, 54 L.Ed.2d 648 (1978).

as those provisions are applied to prevailing plaintiffs.

### A.

Application of the same standard that is used for awarding fees to prevailing plaintiffs under the civil rights statutes would almost automatically result in an award for Dorn's, as a prevailing plaintiff. Under those statutes, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (referring to Title II of the Civil Rights Act). *See also Hensley v. Eckerhart*, 461 U.S. 424, 429, 433 n. 7, 103 S.Ct. 1933, 1934, 1939 n. 7, 76 L.Ed.2d 40 (1983) (citing the legislative history of 42 U.S.C. § 1988, which explicitly adopts the *Piggie Park* standard); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975) (applying *Piggie Park* standard to Title VII of the Civil Rights Act); *Northcross v. Board of Education of Memphis City Schools*, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973) (applying *Piggie Park* standard to § 718 of the Emergency School Aid Act).

In support of their argument that the *Piggie Park* Title II standard should be applied to the award of attorneys' fees under § 1451, Dorn's points out that "similarity of language ... is, of course, a strong indication that the two statutes should be interpreted *pari passu*." *Northcross*, 412 U.S. at 428, 93 S.Ct. at 2202. However, as the Court stated in *Northcross, id.*, we must look beyond facial similarity to the policies underlying the fee statutes before we determine the standard for awarding fees. Such an inquiry reveals that the policies favoring a liberal standard for awarding fees to civil rights *plaintiffs* do not support such a standard for *employers* who bring suits under MPPAA. Rather, for the purposes of fee awards, the position of plaintiff-employers under MPPAA is more analogous to that of prevailing civil rights *defendants*.

The civil rights statutes were designed to give victims of civil rights violations effective access to the judicial process. *See* S.Rep. No. 1011, 94th Cong., 2d Sess. 1, *reprinted in* 1976 U.S.Code Cong. & Ad. News 5908. The routine availability of fees to prevailing plaintiffs in civil rights actions reflects a congressional desire to encourage the bringing of such suits. The *Piggie Park* Court described the importance of such encouragement thus:

> [A civil rights plaintiff is] a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the ... powers of the federal courts. Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II.

390 U.S. at 402, 88 S.Ct. at 966 (footnotes omitted). There is also another reason for a liberal attorneys' fees standard in favor of prevailing civil rights plaintiffs: an award to these parties is made against a violator of federal law. *Christiansburg*, 434 U.S. at 418, 98 S.Ct. at 698.

In *Christiansburg Garment*, the Court faced the issue whether the liberal *Piggy Park* standard applied to prevailing defendants, as well as to prevailing plaintiffs, in Title VII cases. On its face, the fees provision at issue in *Christiansburg*, 42 U.S.C. § 2000e–5(k), makes no distinction between plaintiffs and defendants, referring only to the "prevailing party." However, the Court did not treat the fee-shifting provision as a mechanical exercise, but looked to the policy undergirding it. It pointed out that the "strong equitable considerations counseling an attorney's fee award to a prevailing Title VII plaintiff," which we have set forth, were "wholly absent in the case of a prevailing Title VII defendant." 434 U.S. at 418, 98 S.Ct. at 699. For this reason, the Court adopted a far more strin-

gent standard for awarding fees to prevailing defendants in Title VII actions: "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421, 98 S.Ct. at 700.[4]

*Christiansburg* teaches that even a neutrally-worded fee statute does not necessarily have an identical application to every prevailing party. Rather, when the statute establishes a flexible standard, a consideration of policy and congressional intent must guide the determination of the circumstances under which a particular party, or class of parties (such as plaintiffs or defendants), is entitled to fees. In *Christiansburg*, the Court recognized that while a liberal fees standard should be used for those parties whose suits Congress wished to encourage, and who needed this encouragement to bring the suits, a stricter standard was appropriate for defendants, who needed no encouragement to defend suits against them and who were not vindicating an important public policy. Before adopting a standard for granting attorneys' fees to prevailing employers under MPPAA, we must engage in a similar examination of the equitable considerations supporting such an award.

### B.

MPPAA was promulgated to close several loopholes that had been left open under ERISA, so that pension plans would become financially more secure. *See* H.R. Rep. No. 869, 96th Cong., 2d Sess. 67, *reprinted in* 1980 U.S.Code Cong. & Ad. News 2918, 2935. *See also United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.*, 787 F.2d 128, 130 (3d Cir.1986). MPPAA expanded the situations in which employers would face withdrawal liability to pension plans and increased the amounts of such liability.[5] The policy underlying MPPAA is thus the protection and strengthening of pension plans. That policy is vindicated through the plans themselves, which assess withdrawal liability and bring suit to recover it if necessary.

A liberal attorneys' fees policy for plans would thus be understandable. However, the plaintiff in this case, Dorn's, is not a plan, but an employer. Employers that are defending against an assessment of withdrawal liability are not acting as instruments for carrying out the congressional policy of strengthening plans. Moreover, attorneys' fees are not necessary to encourage employers to resist withdrawal liability, for avoiding an assessment of tens or hundreds of thousands, even millions, of dollars, is sufficient incentive in itself.

When an employer prevails in an MPPAA suit, it does not win a judgment against a violator of federal law. Rather, the losing plan is an entity that was attempting, however misguidedly, to *enforce* federal law, as well as to fulfill its fiduciary duty to the plan beneficiaries. *See Carpenters Southern California Administrative Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir.1984) (["T]he 'culpability' of a losing trustee differs from that of a losing employer. While the latter has necessarily violated ERISA, the former may only be in error or unable to prove his case."); *Marquardt v. North American Car Corp.*, 652 F.2d 715, 720–21 (7th Cir.1981). A liberal standard for awarding fees to prevailing employers may in fact undermine the purpose of MPPAA and discourage plan trustees from performing their fiduciary duties, for it could deter pension plans from bringing suits to recover withdrawal liability.

Thus, the *Piggie Park* standard's all but automatic award of attorneys' fees is inappropriate for employers who win MPPAA

---

**4.** In *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam), the Court applied the *Christiansburg* standard to 42 U.S.C. § 1988 with respect to an award of fees to prevailing defendants in a § 1983 action.

**5.** For a description of how MPPAA works, *see United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.*, 787 F.2d 128 (3d Cir.1986).

suits. As our discussion suggests, the stricter standard adopted for civil rights *defendants* in *Christiansburg* is far better suited to the equities and realities of this situation. Although Dorn's was a plaintiff in this action, it was not the party that was attempting to vindicate the federal policy in favor of strengthening pension plans. Dorn's, as an employer that had undergone a change in corporate structure, was faced with a threatened assessment of withdrawal liability. Instead of waiting to be sued by the Plan, Dorn's came to court seeking a declaration of its liability under MPPAA. Thus, the fact that Dorn's was a plaintiff is simply the result of its having brought an action to determine its liability before the Plan brought an action. This procedural posture does not change the alignment of interests—the Plan wished to enforce the withdrawal provisions of MPPAA, while Dorn's and Oneida wished to avoid liability.[6]

We therefore hold that the standard for awarding attorneys' fees to prevailing employers under the fee-shifting provision of MPPAA, 29 U.S.C. § 1451(e), is the one set forth in *Christiansburg* with respect to awards to prevailing Title VII *defendants.*[7]

### III.

■ Under the *Christiansburg* standard, Dorn's is entitled to attorneys' fees

only if the Plan's assessment of withdrawal liability was frivolous, unreasonable or without foundation. *Christiansburg,* 434 U.S. at 421, 98 S.Ct. at 700. The demand for withdrawal liability need not have been made in bad faith to be considered frivolous, unreasonable or without foundation. *Id.* at 419, 421. However, the mere fact that the Plan did not prevail does not suggest that its claim was completely devoid of merit. Indeed, the *Christiansburg* Court gave a strong warning against such *post hoc* assessment of a claim, stating that "[t]his kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." *Id.* at 422, 98 S.Ct. at 700.

The Plan's position in the litigation underlying this request for attorneys' fees was by no means frivolous, unreasonable, or without foundation. When the Plan appealed from the order declaring that Dorn's did not owe withdrawal liability under the MPPAA, it was far from clear that this Court would interpret § 1398 so as to render Dorn's exempt. This was a case of first impression in this circuit, rather than one involving the application of settled principle, and almost no other courts had addressed the issue.[8] The case turned on a

---

**6.** We do not suggest that a prevailing employer's application for fees should never be considered under a more liberal standard. If the employer has vindicated a constitutional right or benefitted a large number of people, the equities might well favor an easier availability of fees. *See Shelter Framing Corp. v. Pension Benefit Guaranty Corp.,* 705 F.2d 1502 (9th Cir.1983), *rev'd on other grounds sub nom. Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984) (allowing award to employer that prevailed on a constitutional claim); *Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund,* 718 F.2d 628, 644 (4th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984) (same). However, such considerations are inapplicable here, for Dorn's neither prevailed on its constitutional claim nor represents itself as benefiting a large number of people.

**7.** The Plan suggests that we adopt the five-prong test established in *Iron Workers Local No. 272 v.*

*Bowen,* 624 F.2d 1255 (5th Cir.1980), for determining fee awards under the fee-shifting provision of ERISA, 29 U.S.C. § 1132(g). Because we believe that Congress intended that attorneys' fees only rarely should be awarded to prevailing employers under MPPAA, but that they should be awarded quite freely to prevailing plans, we find the *Christiansburg* test more apposite. It imposes a stricter standard on the award of attorneys' fees to prevailing employers than does the more complex *Iron Workers* balancing test. Moreover, unlike the unitary *Iron Workers* test, the *Christiansburg* standard would apply only to prevailing employers, thus allowing the adoption of a more liberal standard for awarding attorneys' fees to prevailing plans.

**8.** Indeed, the district court stated that "[t]he extremely limited case law in this area makes this a difficult issue to resolve." *Dorn's Transportation, Inc. v. Teamsters Pension Trust Fund,* 596 F.Supp. 350, 355 (D.N.J.1984).

difficult point of statutory construction that we were compelled to analyze at some length. Indeed, the extreme narrowness of our holding reveals that this was not an easy issue: we limited the application of such an exemption to "the unusual circumstances" of this case, in which the buyer and seller had identical pension plan agreements with the same local union. 787 F.2d at 898.

Moreover, we did not affirm the district court on the other ground for its decision, § 1301. Although we did not consider "the correctness of the court's problematic holding with respect to § 1301," 787 F.2d at 900, we expressed our doubts whether the district court's analysis was correct. 787 F.2d at 900 n. 4. The questionable nature of the district court's § 1301 holding further demonstrates that the Plan's appeal was not frivolous, unreasonable, or without foundation.

Finally, the issue of § 1392's good faith requirement, and the district court's related denial of additional discovery, as well as the issue of the bypassing of arbitration, were by no means open-and-shut questions. Both of these issues were matters of first impression for this court. As our opinion demonstrates, resolution of the § 1392 issue required a fairly complex analysis, and with respect to arbitration, we were required to adopt a standard for this circuit in response to a question that had not previously been presented here. *See* 787 at 902–03.

Thus, far from being a meritless case, the Plan's appeal presented us with knotty problems that called for detailed analysis. Our opinion does not reveal all the dynamics of its creation, and thus may make the issues appear more straightforward than they really were,[9] but nonetheless it treats

the Plan's arguments with a seriousness that belies the contention that they were frivolous, unreasonable, or without foundation. Thus, under the *Christiansburg* standard, which we have adopted in this case, Dorn's is not entitled to an award of attorneys' fees from the Plan.

### IV.

For the foregoing reasons, the motion of Dorn's and Oneida, pursuant to 29 U.S.C. § 1451(e), for an award of costs and expenses, including a reasonable attorneys' fee, will be denied.

---

**9.** We are mindful of Chief Judge Weinstein's admonition:

Hindsight rationalizations for finding frivolousness must constantly be guarded against.... Judicial opinion-writing style is well-known; after the judge equivocates in chambers and cogitates, with the decision wavering in the balance, the opinion is written in an adversarial fashion as if the court never

had been dubitante and the outcome was always inevitable. This is deemed necessary, perhaps, on the theory that the law must seem certain to be respected. *See* K.N. Llewellyn, *The Common Law Tradition: Deciding Appeals* 24 (1960).
*Eastway Construction Corp. v. City of New York,* 637 F.Supp. 558 (E.D.N.Y.1986), 1986–1 Trade Cas. (CCH) ¶ 67, 165.