856 F.2d 796
 9 Employee Benefits Ca 2603
 Philip ROOTBERG and Edward W. Ross, as trustees under the
Liquidating Trust Agreement of M.P. Electric,
Inc., Plaintiffs-Appellees,
v.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND,
et al., Defendants- Appellants.
 No. 87-2873.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 2, 1988.
Decided Aug. 19, 1988.
 
 Terence G. Craig, Central States Pension Fund, Chicago, Ill., for defendants-appellants.
 Marc O. Beem, Miller, Shakman, Nathan & Hamilton, Chicago, Ill., for plaintiffs-appellees.
 Before POSNER, COFFEY, and KANNE, Circuit Judges.
 POSNER, Circuit Judge.
 
 
 1
 An employer who withdraws from a multiemployer pension fund, such as the teamsters pension fund involved in this case, is required by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. Secs. 1381 et seq., to compensate the fund by reimbursing it for his pro rata share of the fund's vested but unfunded pension liability. The idea is to prevent an employer from shifting to other employers its pension obligations to its employees. In 1981 M.P. Electric, Inc., a participant in the teamsters' Central States multiemployer pension fund, sold the part of its business (electric supply) covered by the Central States pension fund. The fund assessed withdrawal liability of some $165,000 against M.P. It based the assessment on the 14-month history of contributions to the fund by the company from which M.P. had bought the electric-supply business that it had just sold. See 29 U.S.C. Sec. 1382. M.P. contested the assessment, claiming that its predecessor's contribution history was insufficient to impose withdrawal liability on a successor corporation. See 29 U.S.C. Sec. 1389.
 
 
 2
 "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination [of withdrawal liability] shall be resolved through arbitration," 29 U.S.C. Sec. 1401(a)(1), so on March 22, 1984, the trustees of M.P. (the firm is in liquidation) filed a demand for arbitration. The demand was timely, but the arbitration was delayed while Central States gave further consideration to M.P.'s arguments. On May 9, 1985, with the arbitration still in abeyance by mutual consent, M.P.'s trustees filed the present suit, seeking a declaratory judgment that M.P. has no withdrawal liability to the Central States fund. Central States asked the district court to dismiss the suit for want of subject-matter jurisdiction and failure to exhaust administrative remedies (i.e., arbitration), and told the American Arbitration Association that it wanted to proceed immediately with the arbitration over M.P.'s withdrawal liability. M.P.'s trustees responded in August by asking the court to stay the arbitration. On September 4, 1985, before the district judge had ruled on these motions, another district judge, Judge Shadur, in another suit challenging Central States' theory of successor liability, held that the theory had no basis in the statute. Richland Industries Ltd. v. Robbins, 617 F.Supp. 639 (N.D.Ill.1985). Persuaded of the correctness of Judge Shadur's decision, Central States on September 21, 1985, wrote the M.P. trustees that it had decided that M.P. had no withdrawal liability to the fund after all. The trustees then moved to drop this suit, and for an award of attorney's fees. The district court granted both of these motions, and, analogizing the trustees to prevailing plaintiffs in civil rights suits, awarded them almost $36,000 in attorney's fees. Central States appeals, contending that the trustees are entitled to no fee.
 
 
 3
 The MPPAA authorizes an employer adversely affected by an act or omission with respect to a multiemployer plan to bring suit in federal court for appropriate legal or equitable relief. See 29 U.S.C. Secs. 1451(a)(1), (c). And in any such suit "the court may award all or a portion of the costs and expenses incurred in connection with [the suit], including reasonable attorney's fees, to the prevailing party." 29 U.S.C. Sec. 1451(e). This section has no recorded legislative history except for a statement by the floor manager of the bill in the House of Representatives, Congressman Thompson, that if an employer fails to make timely withdrawal-liability payments required by the MPPAA "the court must award the plan ... attorneys' fees." 126 Cong.Rec. 23039 (1980). This language seems overemphatic in view of what section 1451(e) actually says ("the court may award all or a portion of the costs and expenses incurred"), but in any event does not address the case where the employer is the prevailing party. There are few reported cases under this section; but since the MPPAA is an amendment to ERISA (the Employee Retirement Income Security Act of 1974, 29 U.S.C. Secs. 1001 et seq.), which has a similarly worded provision on attorney's fees (in any suit under ERISA "by a participant, beneficiary, or fiduciary [which would include an employer, such as M.P.], the court in its discretion may allow a reasonable attorney's fee and costs of action to either party," 29 U.S.C. Sec. 1132(g)(1))--and such differences in wording between the two provisions as there are appear to be inadvertent--we hold that the standards for awarding attorney's fees are the same. See Central States, Southeast & Southwest Areas Pension Fund v. 888 Corp., 813 F.2d 760, 767 (6th Cir.1987); Cuyamaca Meats, Inc. v. San Diego & Imperial Counties Butchers' & Food Employers' Pension Trust Fund, 827 F.2d 491, 500 (9th Cir.1987). We can therefore treat decisions interpreting section 1132(g) as precedents for the interpretation of section 1451(e).
 
 
 4
 In one of the few decisions interpreting section 1451(e), the Third Circuit held that an employer who prevails, either as plaintiff or defendant, in a suit under the MPPAA is entitled to an award of attorney's fees only if the pension fund's litigating position was frivolous. Dorn's Transportation, Inc. v. Teamsters Pension Trust Fund, 799 F.2d 45 (3d Cir.1986). The court reached this conclusion by analogizing the employer to a defendant in a civil rights suit. (No court before the district court in this case had ever suggested that the victorious employer should be analogized to the prevailing plaintiff in a civil rights suit and should therefore recover attorney's fees virtually as a matter of course.) We had rejected the analogy in interpreting section 1132(g) in Bittner v. Sadoff & Rudoy Industries, 728 F.2d 820, 829 (7th Cir.1984), and had gone on to hold that the employer was entitled to its attorney's fees if the plaintiff's litigating position had lacked substantial justification. See also Van Boxel v. Journal Co. Employees' Pension Trust, 836 F.2d 1048, 1054 (7th Cir.1987). If we are correct that sections 1451(e) and 1132(g) should be interpreted the same way, then Dorn's is not the standard in this circuit. But it will soon become clear that the choice of standard would not change the outcome of this case.
 
 
 5
 Central States argues that M.P.'s trustees did not prevail, for it withdrew its assessment of withdrawal liability not because of this suit but because of Judge Shadur's decision in Richland. Yet a party can prevail, in a common-sense interpretation of this term, through luck as well as sweat. If you bring a suit, and incur expense in its prosecution, and then the defendant throws in the towel for reasons entirely unrelated to your efforts, still you have won, and if your expense was prudent, should it not be reimbursed?
 
 
 6
 The problem lies in determining whether or in what sense the plaintiff has prevailed as a litigant. Suppose the plaintiff's suit was frivolous and would surely have gone down to defeat if litigated, but the defendant, for reasons extrinsic to the suit, decided to cure the plaintiff's grievance; then in no sense relevant to a statutory scheme for reimbursing the expenses of prevailing parties could the plaintiff be entitled to reimbursement.
 
 
 7
 The problem arises frequently in cases that are settled. See, e.g., Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574-75, 65 L.Ed.2d 653 (1980). The plaintiff has got something for his efforts, but does it follow that he prevailed? It does not. The suit may have been groundless, and settled merely because it had some nuisance value; in such a case the plaintiff will not receive an award of attorney's fees. Harrington v. DeVito, 656 F.2d 264, 266-67 (7th Cir.1981); Palmer v. City of Chicago, 806 F.2d 1316, 1323 (7th Cir.1986); EEOC v. Madison Community Unit School District No. 12, 818 F.2d 577, 590 (7th Cir.1987). (Conversely, if the suit is not frivolous and does produce results--which could be a favorable settlement, or even a judgment in another forum than the one in which the suit was brought--an award of attorney's fees is permissible. See, e.g., Hewitt v. Helms, --- U.S. ----, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987); Sullivan v. Commonwealth of Pennsylvania Department of Labor, Etc., 663 F.2d 443, 449 (3d Cir.1981).) The case before us presents the reverse situation: not the meritless case that produces some benefit for the plaintiff but the possibly meritorious case that, because of supervening events, has no effect. The courts uniformly reject the plaintiff's claim for reimbursement unless he can show that the suit was a cause (or "catalyst," as the cases often say) of the victory, the assumption being that "causing" is as prerequisite to an award of attorney's fees as "prevailing," or perhaps is implied by the latter word. Our most recent statement of this position is in Hendricks v. Bowen, 847 F.2d 1255, 1258 (7th Cir.1988), and there are many others. See, e.g., In re Burlington Northern, Inc. Employment Practices Litigation, 832 F.2d 422, 425 (7th Cir.1987); Janowski v. International Brotherhood of Teamsters Local No. 710 Pension Fund, 812 F.2d 295, 298 (7th Cir.1987); Gekas v. Attorney Registration & Disciplinary Comm'n, 793 F.2d 846, 849 (7th Cir.1986) (per curiam); Illinois Welfare Rights Organization v. Miller, 723 F.2d 564, 568-69 (7th Cir.1983); Disabled in Action of Pennsylvania v. Pierce, 789 F.2d 1016, 1019 (3d Cir.1986); Othen v. Ann Arbor School Bd., 699 F.2d 309, 313 (6th Cir.1983). This assumption spells doom for the trustees' claim to fees, since it is apparent that the defendants reconsidered their position on withdrawal liability because of Judge Shadur's forceful opinion in Richland and not because of the trustees' lawsuit.
 
 
 8
 The assumption could be questioned. It could be argued that an award of attorney's fees is justifiable if the plaintiff prudently incurred reasonable fees in pursuit of a meritorious claim and then had the claim fall into its lap because the defendant, for reasons wholly unrelated to the suit, dropped its objections. Cf. Hendricks v. Bowen, supra, 847 F.2d at 1259-61 (concurring opinion). For what is a plaintiff to do who has a meritorious suit yet knows there is some chance that the defendant will buckle irrespective of the suit? There is a bare hint in Coalition for Basic Human Needs v. King, 691 F.2d 597, 600 (1st Cir.1982), that the First Circuit might be sympathetic to such a plaintiff's claim for attorney's fees, yet of the many cases that hold that the plaintiff's suit must be the catalyst of the defendant's remedial actions only two actually discuss our question and both denied attorney's fees. In Truax v. Bowen, 842 F.2d 995 (8th Cir.1988) (per curiam), a divided panel of the Eighth Circuit held that, even though the plaintiff had to file suit in order to obtain certain benefits under the Social Security Act, he could not obtain attorney's fees, because while his suit was pending Congress had passed a statute that established his right to those benefits. "[A]lthough it is true that had [the plaintiff] not filed his lawsuit he would not have obtained relief, we fail to see how this 'but for' argument establishes a causal connection between the litigation and the Secretary's remedial action." Id. at 997. It doesn't, but the question is whether the plaintiff should be denied attorney's fees when he could not have prevailed without suing, even though his suit was not what caused the defendant to cave. The second case, however, is our own Hendricks v. Bowen, supra, and there a panel of this court (though divided on this question) adopted the reasoning and result in Truax. For now, at least, that is the law of this circuit. And even if we were minded to reexamine Hendricks, this would not be the right case in which to do so, since in any event the trustees' claim must fail because of a peculiarity of the Multiemployer Pension Plan Amendments Act.
 
 
 9
 The arbitration of disputes over withdrawal liability is, as we have seen, mandatory; and a regulation of the Labor Department bars the arbitrator-the parties agree-from awarding attorney's fees in the absence of bad faith or misconduct, neither of which is suggested here. See 29 C.F.R. Sec. 2641.9(c) ("the arbitrator may require a party that initiates or contests an arbitration in bad faith or engages in dilatory, harassing, or other improper conduct during the course of the arbitration to pay reasonable attorney's fees of other parties"). So if the trustees had stayed with the arbitration they demanded rather than file this lawsuit, they could not have gotten attorney's fees.
 
 
 10
 The trustees argue that since the issue of the withdrawal liability of successor corporations is a pure issue of statutory interpretation, and since (unlike the case of normal arbitration) judicial review of the arbitrator's resolution of issues of law is plenary under the MPPAA (or so at least the Ninth Circuit held in Board of Trustees v. Thompson Building Materials, Inc., 749 F.2d 1396, 1405-06 (9th Cir.1984), by inference from section 1401(c), and neither side in our case questions that holding), they were entitled to proceed in the district court in the first instance. And if they were entitled to bypass arbitration, then surely, they argue, the provision governing the award of attorney's fees in arbitration can have no application.
 
 
 11
 There is no question that the MPPAA authorizes this suit for declaratory judgment; the only question is whether the statute establishes a requirement of exhausting arbitral remedies that is so broad and absolute that it applies even to cases in which the more efficient course would be to proceed directly to court. The statutory language, quoted earlier, is broad, and the right of either party to demand arbitration, even if the only issue between them is a pure issue of law, is not questioned. The trustees' argument that Central States based its decision on withdrawal liability not on the MPPAA but on common law notions of successor liability, and therefore the decision was not arbitrable, is frivolous. The statute requires arbitration of determinations made under the MPPAA, and a determination of withdrawal liability is such a determination regardless of the pension fund's reasoning process.
 
 
 12
 It doesn't follow, however, that just because issues of law are arbitrable, the parties must arbitrate them. Most cases hold, and we have agreed, that section 1401(a)(1) is not jurisdictional. See, e.g., Robbins v. Admiral Merchants Motor Freight, Inc., 846 F.2d 1054, 1056 (7th Cir.1988); Central States Southeast & Southwest Areas Pension Fund v. T.I.M.E.-DC, Inc., 826 F.2d 320, 325-28 (5th Cir.1987); Grand Union Co. v. Food Employers Labor Relations Ass'n, 808 F.2d 66, 69 (D.C. Cir.1987); but see Marvin Hayes Lines, Inc. v. Central States, Southeast & Southwest Areas Pension Fund, 814 F.2d 297, 300 (6th Cir.1987). And the statement by Congressman Thompson that "the role of the arbitrator under this Act will be similar to that of a judge applying applicable law to the facts presented," 126 Cong. Rec. 23039 (1980), relied on in Teamsters Pension Trust Fund v. Allyn Transport, Co., 832 F.2d 502, 504 n. 3 (9th Cir.1987), to demonstrate that arbitration is indeed mandatory even though only legal questions are involved, is actually irrelevant. Congressman Thompson's point (as the words that follow the quotation make clear) was not that issues of law ought always to be submitted to the arbitrators in the first instance but that arbitrators under the MPPAA should resist the common impulse of commercial and labor arbitrators to compromise disputes rather than enforce entitlements.
 
 
 13
 The question whether the MPPAA requires arbitration of pure issues of law has divided the circuits. The Second Circuit in T.I.M.E.-DC, Inc. v. Management-Labor Welfare & Pension Funds, 756 F.2d 939, 945 (2d Cir.1985), held it does not. In like vein the District of Columbia Circuit held in I.A.M. National Pension Fund Benefit Plan C v. Stockton Tri Industries, 727 F.2d 1204, 1210 (D.C.Cir.1984), that arbitration is not required if the dispute between the parties involves no issue within the expertise of arbitrators, while the Third Circuit held in Dorn's Transportation, Inc. v. Teamsters Pension Trust Fund, 787 F.2d 897, 903 (3d Cir.1986), that arbitration can be bypassed when there are no factual issues. Lately, however, most courts, including both the D.C. Circuit and the Third Circuit, have been busy narrowing Stockton; and Allyn may reflect an emerging consensus. See Grand Union Co. v. Food Employers Labor Relations Ass'n, supra; I.A.M. National Pension Fund v. Clinton Engines Corp., 825 F.2d 415, 418 (D.C.Cir.1987); Flying Tiger Line v. Teamsters Pension Trust Fund, 830 F.2d 1241, 1253-55 (3d Cir.1987); Mason & Dixon Tank Lines, Inc. v. Central States, Southeast & Southwest Areas Pension Fund, 852 F.2d 156, 164-65 (6th Cir.1988). Yet the Second Circuit recently reaffirmed its contrary position. See Park South Hotel Corp. v. New York Hotel Trades Council, 851 F.2d 578, 582 (2d Cir.1988).
 
 
 14
 This is not the right case for us to take sides in this dispute, since even if M.P.'s trustees were entitled to bypass arbitration it still would be anomalous to allow them to obtain, by virtue of their action, an award of attorney's fees that they concede they could not obtain if they had proceeded in the normal fashion, that is, by staying with the arbitration that they demanded and by prevailing before the arbitrator, as undoubtedly they would have done. By making the judicial option cheaper to the plaintiff than the arbitral, an award of attorney's fees in this case would encourage the bypassing of arbitration despite the strong preference for arbitration that the statute expresses, and would encourage the multiplication of proceedings. The trustees started down the arbitration route; they should have continued on that route rather than switch to the courts.
 
 
 15
 The regulation we have quoted makes clear that in resolving disputes over withdrawal liability each party shall bear its own fees in the absence of bad conduct. In light of the considerations just discussed, we hold that the spirit of the regulation requires that this principle be enforced whichever forum is selected by the party seeking an award of attorney's fees. M.P.'s trustees were therefore not entitled to reimbursement of the fees they incurred--futilely, as it turned out--in the district court.
 
 
 16
 The same conclusion is reached by reflecting once again on the requirement of proving a causal connection between suit and victory. This requirement can, as we have said, be questioned in cases such as Truax or Hendricks where the plaintiff had to sue in order to get his benefits, even though he got those benefits for reasons unrelated to his efforts in the suit. The present case is different, for while M.P.'s trustees may well have had to institute some form of litigation in order later to take advantage of the change of heart induced by Judge Shadur's decision in Richland, they didn't have to file a suit. All they had to do was demand--and they did demand--arbitration. The lawsuit was superfluous. It not only did not cause Central States' change of heart; it was not even a necessary condition of that change, as Truax's suit was a necessary condition (though the majority in Hendricks held that it was not a "proximate cause," 847 F.2d at 1258) of his obtaining the benefit of the new social security amendments.
 
 
 17
 The judgment of the district court is reversed with directions to dismiss the request for attorney's fees.
 
 
 18
 REVERSED.