ANITA FOUNDATIONS, INC., Fifth Seasons, Ltd., The Jackfin Company, Inc., Jack Wasserman Company, Inc., Lady Match Mates Corp., Les Belles Ent., Nassau Miss, Inc., Offspring Industries, Inc., Preferred Fashions, Inc., Sig Heller Co., Solvent Finishers, Inc., Plaintiffs–Appellees,

v.

ILGWU NATIONAL RETIREMENT FUND, Jay Mazur and Joseph Moore, Defendants–Appellants.

FASHION AFFILIATES, INC., Plaintiff–Appellee,

v.

ILGWU NATIONAL RETIREMENT FUND, Defendant–Appellant.

Nos. 737, 738, Dockets 89–7956, 89–7958.

United States Court of Appeals, Second Circuit.

Argued Jan. 25, 1990.

Decided April 25, 1990.

K. Peter Schmidt, Washington, D.C. (Philip W. Horton, Arnold & Porter, Washington, D.C., and Kenneth V. Handal, Michael D. Schissel, Arnold & Porter, New York City, of counsel), for defendants-appellants.

Norman Solovay, New York City (Joan Ruby, Steven Post, Stanley D. Halperin, Phillips, Nizer, Benjamin, Krim & Ballon, of counsel), for plaintiffs-appellees Anita Foundations, Inc., et al.

Louis T. Urbanczyk, New York City (Lester M. Bridgeman, Miller, Hamilton, Snider, Odom & Bridgeman, of counsel), for plaintiff-appellee Fashion Affiliates.

Before VAN GRAAFEILAND, MINER and WALKER, Circuit Judges.

MINER, Circuit Judge:

Defendants-appellants ILGWU National Retirement Fund, Jay Mazur and Joseph Moore (collectively the "Fund") appeal from judgments of the United States District Court for the Southern District of New York (Conboy, J.) awarding attorney's fees to plaintiffs-appellees Anita Foundations, Inc., et al. and Fashion Affiliates, Inc. (collectively the "Employers") under the fee-shifting provision of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461 (1982 & Supp. V 1987), as amended by the Multiemployer Pension Plan Amendments Act (MPPAA), 29 U.S.C. §§ 1381–1453 (1982 & Supp. V 1987). The district court determined that the Fund's claims for payment of withdrawal liability from the Employers was barred by prior settlement agreements. It awarded attorney's fees to the Employers pursuant to the fee-shifting provision of the MPPAA, 29 U.S.C. § 1451(e), as prevailing parties in these declaratory actions brought to determine their withdrawal liability.

On appeal, the Fund contends that the fiduciary duty it owed to employees/beneficiaries required it to pursue claims for additional withdrawal liability payments as the consequence of a decision in the Ninth Circuit, despite the settlement agreements entered into earlier. However, the Fund does not appeal from so much of the judgment as rejects this contention. It asserts only that the fee awards were an improper exercise of the district court's discretionary powers under section 1451(e). It also maintains that the fee award in the Anita Foundations action was excessive. We find that the Fund asserted its claims in defiance of the public policy favoring settlement agreements and therefore conclude that the district court did not abuse its discretion by assessing attorney's fees against it. We also determine that the fee award in the Anita Foundations action was not excessive. Accordingly, we affirm.

## BACKGROUND

This appeal follows the imposition of attorney's fees against the Fund after summary judgment was entered in favor of the Employers. The Fund is a multiemployer plan as defined by ERISA, 29 U.S.C. §§ 1002(37), 1301(a)(3). The Employers are former contributors that withdrew from the Fund and liquidated their respective business operations between 1982 and 1985. As a result of withdrawal from the Fund, the Employers were notified of a

demand for withdrawal liability payments under the MPPAA.[1] The Employers protested the amounts of liability payments demanded, informing the Fund that they were entitled to an adjustment of liability as liquidating employers under MPPAA section 4225(a), 29 U.S.C. § 1405(a). At the time of the demand, section 4225(a) had not yet been subject to judicial scrutiny, and there were unresolved issues regarding its application.

Beginning in 1984, the Fund and the individual employers entered into various out-of-court settlement agreements providing for adjusted withdrawal liability payments under section 4225(a). In 1986, after the settlements were finalized, the Ninth Circuit adopted an interpretation of section 4225(a) which differed markedly from the interpretation applied by the Fund and the Employers in reaching their settlements. *See Trustees of the Amalgamated Ins. Fund v. Geltman Indus. Inc,* 784 F.2d 926 (9th Cir.), *cert. denied,* 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986). It is not disputed that application of the Ninth Circuit's interpretation of section 4225(a) would result in additional withdrawal liability on the part of the Employers here.

In the wake of *Geltman,* the Fund received three opinion letters from counsel discussing various aspects of the Ninth Circuit decision, including its effect on the settlement agreements previously negotiated. Over two years after the settlements, and long after the Employers had been liquidated, the Fund served the Employers with a notice of demand for additional withdrawal liability payments. The Employers' response, a memorandum advising that the claims were unfounded, was rejected peremptorily by the Fund. Confronted with the possibility of substantial additional liability, liquidated damages and the pay-first-question-later system prescribed by 29 U.S.C. § 1401(d), the Employers commenced these declaratory actions to determine their rights under the settlement agreements.

After finding for the Employers and entering summary judgment in their favor, the district court allowed the Employers to submit a fee request under 29 U.S.C. § 1451(e). *Anita Foundations, Inc. v. ILGWU Nat'l Retirement Fund,* 710 F.Supp. 983, 988 (S.D.N.Y.1989). The court reviewed submissions from the Employers and held a hearing on the fee application. It awarded $131,738.25 to Anita Foundations, Inc., et al. and $24,300 to Fashion Affiliates. *Anita Foundations, Inc. v. ILGWU Nat'l Retirement Fund,* 718 F.Supp. 244, 249 (S.D.N.Y.1989).

## DISCUSSION

The MPPAA authorizes an employer, beneficiary, plan fiduciary or plan participant who is "adversely affected" by the actions of any party with respect to a multiemployer plan to bring suit for equitable or legal relief. 29 U.S.C. § 1451(a)(1). In addition, the prevailing party in such a suit may be awarded attorney's fees and other expenses pursuant to the fee-shifting provision of the MPPAA. *Id.* § 1451(e). When the prevailing party in a withdrawal liability suit is the employer, courts exercise cautiously the discretionary power to award fees. *See Cuyamaca Meats, Inc. v. San Diego and Imperial Counties Butchers' and Food Employers' Pension Trust Fund,* 827 F.2d 491, 500 (9th Cir.1987), *cert. denied,* 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 703 (1988); *Central States, Southeast and Southwest Areas Pension Fund v. 888 Corp.,* 813 F.2d 760, 767 (6th Cir.1987); *Dorn's Transp., Inc. v. Teamsters Pension Trust Fund,* 799 F.2d 45, 49–51 (3d Cir.1986).

### 1. The Appropriate Standard

■ The Fund raises a threshold question concerning the appropriate standard

---

1. Upon withdrawal from a multiemployer pension plan, a contributing employer is liable for its proportionate share of the unfunded vested benefit liability existing in the plan at the time of withdrawal. 29 U.S.C. § 1381(a). A fund may then serve a notice of demand for withdrawal liability, and the employer must commence payments within sixty days of the demand, even if the employer seeks review and arbitration of the amount demanded. *See* 29 U.S.C. § 1401(d).

for a fee award to a prevailing employer in a withdrawal liability suit. Two tests have been considered by the circuits addressing this issue. The first test, which is usually applied to fee applications under the ERISA fee-shifting provision, 29 U.S.C. § 1132(g)(1), entails the examination of five factors. Under this five-factor test a court will consider:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action sought to confer a common benefit on a group of pension plan participants.

*Miles v. New York State Teamsters Conference, Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 602 n. 9 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *see also 888 Corp.,* 813 F.2d at 767. The Fund, however, urges this court to reject the *Miles* five-factor test in favor of the narrower path followed by the Third Circuit in *Dorn's Transportation, Inc. v. Teamsters Pension Trust Fund,* 799 F.2d 45 (3d Cir.1986). The *Dorn's* test allows a prevailing employer to receive attorney's fees "only if the underlying claim against it was frivolous, unreasonable, or without foundation." *Id.* at 46; *accord Park South Hotel Corp. v. New York Hotel Trades Council and Hotel Ass'n of New York City, Inc., Pension Fund,* 715 F.Supp. 596, 597 (S.D.N.Y.1989).

With the exception of the Third Circuit, the five-factor test originally adopted for fee requests under section 1132(g)(1) has been applied universally in situations where employers have requested fees under the MPPAA. *See, e.g., Rootberg v. Central States, Southeast and Southwest Areas Pension Fund,* 856 F.2d 796, 798 (7th Cir.1988); *Cuyamaca Meats,* 827 F.2d at 500; *888 Corp.,* 813 F.2d at 767. Choosing an appropriate test for adjudging an employer's fee request under section 1451(e) presents an issue of first impression for this court. We recognize, however, that as an appellate court sitting in review of an award of attorney's fees, our ultimate concern is whether granting the Employers' fee request constituted an abuse of discretion by the district court. *See, e.g., Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 871 (2d Cir.1987); *Rosario v. Amalgamated Ladies' Garment Cutters' Union,* 749 F.2d 1000, 1004 (2d Cir.1984).

As an amendment to ERISA, the MPPAA was designed to strengthen the financial security of multi-employer pension plans. *See* H.R.Rep. No. 869, 96th Cong., 2d Sess., pt. 1, at 67, *reprinted in* 1980 U.S.Code Cong. & Admin.News 2918, 2935. It achieves this goal by requiring employers that withdraw from a plan to pay their proportionate share of the unfunded vested benefits of plan participants. 29 U.S.C. § 1381(a). The Fund notes that, unlike an employer who loses an MPPAA suit, a losing fund is "an entity that was attempting, however misguidedly, to *enforce* federal law, as well as to fulfill its fiduciary duty to the plan beneficiaries." *Dorn's,* 799 F.2d at 49 (emphasis in original). Accordingly, the Fund concludes that this court should follow suit and adopt the frivolous litigation standard applied by the Third Circuit. We disagree.

Section 1451 authorizes suit by employers "adversely affected" by inappropriate actions of parties involved with multiemployer plans as well as by plan fiduciaries. The same section authorizes attorney's fees to a prevailing party without regard to whether it is an employer or a plan fiduciary. *See* 29 U.S.C. § 1451(e). The MPPAA was intended as a modification of ERISA, and it makes sense to apply to the MPPAA the standards developed under the ERISA fee-shifting statute. *Rootberg,* 856 F.2d at 798; *Cuyamaca Meats,* 827 F.2d at 500; *888 Corp.,* 813 F.2d at 767.

Most importantly, the five-factor test provides sufficient latitude to review a fee request by allowing courts to consider which party is requesting fees, assess the relative culpability of the parties and address the potential deleterious effect of a fee award. For these reasons, the five

factors will often balance against an employer seeking fees under ERISA and the MPPAA. *Cuyamaca Meats,* 827 F.2d at 500; *888 Corp,* 813 F.2d at 767 (rejecting employer's request under the culpability factor); *Carpenters S. Cal. Admin. Corp. v. Russell,* 726 F.2d 1410, 1416 (9th Cir. 1984) (five factors usually weigh against an employer's request for fees under section 1132(g)); *Gray v. New England Tel. and Tel. Co.,* 792 F.2d 251, 259 (1st Cir.1986) (same); *Marquardt v. North Am. Car Corp.,* 652 F.2d 715, 719–20 (7th Cir.1981) (same); *Park South Hotel,* 715 F.Supp. at 598 n. 4. The frivolous litigation test urged by the Fund was established in the context of civil rights suits, which the courts are especially careful not to discourage. The *raison d'être* underlying the award of attorney's fees under civil rights statutes is different from that underlying the award of attorney's fees under the MPPAA provision. The frivolous litigation test not only is overly rigid but also fails for want of guidelines easily applicable in the pension fund context. While we are mindful of the policy considerations behind the enactment of the MPPAA, we find that the adoption of the flexible five-factor test will not discourage colorable withdrawal liability suits.

### 2. Abuse of Discretion

■ Analyzing the Employers' fee requests in light of the five-factor test outlined in *Miles,* we are persuaded that the district court did not abuse its discretion in awarding fees to the Employers.

We begin our review with the first and fourth factors of the *Miles* five-factor test. Unlike the frivolous litigation test, the culpability of the losing party and the relative merits of the parties' positions are not dispositive under the five-factor test. *See 888 Corp.,* 813 F.2d at 767; *Gray,* 792 F.2d at 258; *Russell,* 726 F.2d at 1416. However, it cannot be denied that these considerations weigh heavily in the balance under both tests. For this reason, the Fund vigorously contests any imposition of fees because, it asserts, it did not act in bad faith or adopt an unreasonable position. The Fund contends that it adopted its post-*Gelt-*

*man* posture because it believed the settlements were premised on a mutual mistake of law and therefore it had a fiduciary duty to pursue post-settlement withdrawal liability payments. We agree with the district court that the premise for disturbing the settlements was untenable, and the deference normally accorded the Fund's fiduciary status does not militate against the finding that their position was meritless.

■ It is well settled that an agreement predicated on a mutual mistake of law can be the subject of rescission. *Restatement (Second) of Contracts* § 151 comment b, at 384 (1981). The Fund contends that the parties entered into the settlement agreements here based upon a mutual mistake of law—a statutory interpretation that subsequently was rejected by the Ninth Circuit decision. According to the Fund, *Geltman* established that the law applicable at the time of the settlements was different from what the parties thought it to be. Under the circumstances revealed here, however, the mistake of law doctrine is inapplicable.

■ Succinctly put, "a settlement payment, made when the law was uncertain, cannot be successfully attacked on the basis of any subsequent resolution of the uncertainty." *Moses–Ecco Co. v. Roscoe–Ajax Corp.,* 320 F.2d 685, 690 (D.C.Cir. 1963). This apposite statement is consistent with the established rule that a change in the law does not render an agreement void. *Lemon v. Kurtzman,* 411 U.S. 192, 207–09, 93 S.Ct. 1463, 1472–74, 36 L.Ed.2d 151 (1973); *Gimbel Bros. v. Brook Shopping Centers, Inc.,* 118 A.D.2d 532, 534, 499 N.Y.S.2d 435, 437–38 (2d Dep't 1986) (mem.); *Kinney v. Kinney,* 48 A.D.2d 1002, 1002, 369 N.Y.S.2d 258, 260 (4th Dep't 1975) (mem.) ("Contract obligations are determined by the law in force at the time the contract is executed"); *cf.* 3 *Corbin on Contracts* § 617, at 757 & n. 61 (1960). At the time of the settlements, section 4225(a) had not been subject to judicial interpretation and therefore the Fund was aware that the agreements were entered into on the basis of an uncertain premise. There is no indication that the

parties intended to avoid the settlement if "one party got a better bargain than had been anticipated" simply because the settlement was based upon a matter in doubt. *Leasco Corp. v. Taussig*, 473 F.2d 777, 781 (2d Cir.1972); *cf. Gerard v. Almouli*, 746 F.2d 936, 939 (2d Cir.1984). The uncertainty of a legal position and the desire to avoid the risk of a lawsuit are the impetus for many out-of-court settlements. It simply is inappropriate to equate these settlement agreements with agreements premised upon the misapplication of settled legal principles.

The Fund's post-settlement posture flies in the face of the strong public policy favoring settlements. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 997 (2d Cir.1983); 15A Am.Jur.2d *Compromise and Settlement* § 5 (1976). Courts are wary of disturbing settlements, because they represent compromise and conservation of judicial resources, two concepts highly regarded in American jurisprudence. The need for finality was especially important, because the Employers were not merely withdrawing from the Fund but were seeking to conclude their financial affairs. It is apparent that the parties entered into the settlements, because they wished to avoid arbitration or litigation and realized that the outcome of any judicial proceedings involving the interpretation of section 4225(a) would be uncertain. Preserving settlement agreements promotes the MPPAA policy that "disputes over withdrawal liability issues [sh]ould be resolved quickly." *ILGWU National Retirement Fund v. Levy Bros. Frocks*, 846 F.2d 879, 887 (2d Cir.1988).

The Fund cannot shield itself from liability by hiding behind its fiduciary status. Although it was advised by counsel to consider pursuing additional withdrawal liability payments from the Employers, this advice does not serve to insulate it from an unreasonable decision. *See Davidson v. Keenan*, 740 F.2d 129, 133 (2d Cir.1984). The Fund was warned in the second opinion letter from its counsel that "fiduciaries must weigh the expected cost of pursuit against the magnitude and likelihood of the expected recovery." None of the opinion letters indicate that the Fund sought advice as to, or considered, the amount it could reasonably expect to collect from the Employers, the likelihood of success, or even the possibility of being assessed attorney's fees. Such considerations would have been necessary to properly evaluate whether a demand for additional withdrawal liability payments was warranted. *See Restatement (Second) of Trusts* § 177 comment c (1959).

There were a number of uncertainties that mandated careful evaluation by the Fund of its post-settlement position. First, the district court was not bound by the Ninth Circuit decision in *Geltman*. *See Beck v. Manufacturers Hanover Trust Co.*, 650 F.Supp. 48, 50 (S.D.N.Y.1986), *aff'd*, 820 F.2d 46 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *United States v. Barth*, 591 F.Supp. 91, 97 (D.Conn.), *aff'd in part and rev'd in part on other grounds*, 745 F.2d 184 (2d Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1356, 84 L.Ed.2d 378 (1985); *see also SEC v. Shapiro*, 494 F.2d 1301, 1306 n. 2 (2d Cir.1974). In fact, the Fund was informed that this was so in the opinion letter of February 10, 1987. Second, the Fund throughout has viewed its legal position as "novel" but has not appealed the district court decision on the merits. Third, the Employers had liquidated their businesses and thus the ability of the Fund to collect the amounts sought was uncertain at best. Finally, and most importantly, pursuit of additional liability was in direct contravention of settlement agreements that were several years old. Therefore, under the first and fourth factors of the *Miles* five-factor test, the district court properly found against the Fund as to the relative merits of the Fund's position and its good faith in pursuing additional monies from the Employers.

█ The second factor under *Miles* concerns the ability of the losing party to satisfy the fee award. The Fund contends that the fee award would have to be satisfied at the expense of the remaining employers or the Fund participants. It ad-

mits, however, that it has the "literal ability to satisfy [the] award." As fiduciaries, the Fund had a duty to consider the ramifications of making the demand after entering into the settlement agreements. Counsel for the Employers admonished the Fund that they would seek legal fees if they were forced to litigate the issue. The Fund therefore was aware that "an unsuccessful action brought with it the prospect of ... an award of legal fees and costs." *American Communications Ass'n v. Retirement Plan for Employees of RCA Corp.*, 507 F.Supp. 922, 924 (S.D.N.Y.1981).

The Fund contends that, under the third factor, the award here would not have a greater deterrent effect than already has resulted from the decision on the merits. The position is unwarranted; attorney's fees were not imposed against the Fund simply because it lost but because it asserted claims in contravention of the settlement agreements. The Employers are a group of small businessmen who not only withdrew from the fund but liquidated, relying on the settlement as a resolution of an important financial issue. The Fund, moreover, did not demonstrate a colorable legal position. *See 888 Corp.*, 813 F.2d at 767. The need to deter cavalier attitudes toward settlement agreements is apparent. A fee award here reaffirms the dignity to be afforded such settlements.

The district court concluded that the fifth factor—benefit to others—was not applicable to cases where an employer seeks attorney's fees. This factor has been described in terms of the benefit conferred on pension plan participants and is not wholly applicable where it is the employer seeking fees. *See Miles*, 698 F.2d at 602 n. 9. There was, however, some benefit to others here. As a result of these lawsuits, the Fund withdrew similar demands against some thirty other employers with whom they had settled.

In light of the foregoing, it cannot be said that the district court abused its discretion in awarding attorney's fees to the Employers under the five-factor test. We think that the same result would obtain even if we applied the stricter *Dorn's* standard. Unlike in *Dorn's*, in which it could not be said that the underlying claim was frivolous, unreasonable, or without foundation, the claim asserted by the Fund here disregarded settlement agreements and was premised on an incorrect and convoluted application of the mistake of law doctrine.

### 3. Excessive Fees

The Fund maintains that the fee awarded to the employers in the Anita Foundations action was excessive. The amount of a fee award is reviewed under the abuse of discretion standard. *See Rosario*, 749 F.2d at 1008. The district court awarded $138,738.25 after a hearing and review of the parties' lengthy submissions. The Fund fails to establish how the award is excessive, except to rely on the general assertion that the case required no discovery and was decided on a motion for summary judgment. *See American Communications*, 507 F.Supp. at 924.

Generally, fee awards are calculated by multiplying the hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Rosario*, 749 F.2d at 1005. The Fund fails to highlight any evidence in the record that the figures employed were inappropriate. The original fee request, $188,731 based upon over 1,158 hours attributed to the case, was properly based upon submissions by the employers in the Anita Foundations action. *See Rosario*, 749 F.2d at 1005. The district court reviewed these submissions, conducted a hearing and advised the employers in the Anita Foundations action to submit a request for a reduced fee. The Fund then did not respond to the reduced fee request submitted by these employers. In the absence of a specific attack on the method of review utilized by the district court or on these submissions, we cannot say the award constituted an abuse of discretion.

### CONCLUSION

The judgment of the district court is affirmed.